Filed 1/20/15

<u>**CERTIFIED FOR PUBLICATION**</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>DEMARCUS MONTE GIVAN,<br><br>Defendant and Appellant. | F066825<br><br>(Super. Ct. No. BF140689A)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Kern County. Thomas S. Clark, Judge.

Robert L.S. Angres, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Kathleen A. McKenna and Charity S. Whitney, Deputy Attorneys General, for Plaintiff and Respondent.

*INTRODUCTION*

On January 22, 2012, defendant DeMarcus Monte Givan was driving in excess of the speed limit when he ran a red light and struck a vehicle driven by Tommy Fulce and his wife, Laura Fulce. Laura Fulce died as a result of the accident and Tommy Fulce sustained major injuries. Defendant's passenger, Eric Bender, also sustained injuries. Approximately one hour after the accident, defendant had a blood alcohol level of 0.17 percent.

On July 25, 2012, the Kern County District Attorney filed an information charging defendant with gross vehicular manslaughter while intoxicated (count 1; Pen. Code, § 191.5, subd. (a)), driving under the influence and causing bodily injury (count 2; Veh. Code, § 23153, subd. (a)), and driving with an excessive blood alcohol level causing injury (count 3; Veh. Code, § 23153, subd. (b)). As to each count, the information further alleged the following: defendant caused great bodily injury to more than one victim, to wit: Tommy Fulce and Bender (Veh. Code, § 23558); defendant had a blood alcohol level of 0.15 percent or more (Veh. Code, § 23578); defendant had been previously convicted of six felonies (Pen. Code, §§ 667, subds. (c)–(j), 1170.12, subds. (a)–(e)); defendant inflicted great bodily injury on a victim older than 70 years of age, to wit: Tommy Fulce (Pen. Code, § 12022.7, subd. (c)); and each count was a serious felony (Pen. Code, § 1192.7, subd. (c)(8)).

On July 27, 2012, defendant pled not guilty to all counts and denied all allegations. On January 23, 2013, a jury trial commenced. On January 30, 2013, the jury found defendant guilty on all counts and found true all allegations. The same day the jury rendered its verdicts, the trial court found true the allegation defendant had been previously convicted of five felonies.[1]

---

[1]     After the jury rendered its verdicts, the prosecution dismissed in all counts the prior alleged felony conviction under Penal Code section 245, subdivision (d)(1), in Kern County Superior Court case No. SC067459A.

On February 27, 2013, defendant filed a motion to strike his prior convictions pursuant to Penal Code section 1385, which the trial court denied at the sentencing hearing on March 1, 2013. The court denied probation. As to count 1 (Pen. Code, § 191.5, subd. (a)), defendant was sentenced to 25 years to life, plus a one-year enhancement (Veh. Code, § 23558), plus a five-year enhancement (Pen. Code, § 12022.7, subd. (c)), plus a one-year enhancement (Veh. Code, § 23558) stayed pursuant to Penal Code section 654. The court stayed sentence on counts 2 and 3, along with their respective enhancements.

On appeal, defendant contends the trial court should have sua sponte instructed the jury on a mistake of fact defense after he presented such a defense at trial. Defendant asserts the trial court committed prejudicial error, requiring reversal of his convictions. In the alternative, defendant maintains his trial counsel rendered constitutionally ineffective assistance in not requesting a mistake of fact jury instruction.

We find these arguments unpersuasive.

Defendant further argues he could not be lawfully convicted of count 2 because it is a lesser included offense of count 1. Respondent concedes this point, which we accept as proper. As such, we reverse count 2 but otherwise affirm.

## FACTUAL BACKGROUND

Defendant does not challenge the sufficiency of the evidence supporting the jury's convictions. As such, set forth below are those facts taken in the light most favorable to the verdicts but relevant to defendant's contentions on appeal.

### Prosecution evidence

At about 8:00 a.m. on Sunday, January 22, 2012, defendant was driving in Bakersfield on White Lane when he struck a vehicle carrying Tommy Fulce and his wife, Laura Fulce, at the intersection of Akers Road and White Lane. Tommy Fulce, who was born on December 7, 1939, was driving and entered the intersection on Akers Road on a green light. Defendant struck them when he entered the intersection on White Lane

3.

against a red light. As a result of the accident Laura Fulce died and Tommy Fulce was hospitalized for four days for blunt abdominal trauma, internal bleeding, back strain, contusions and abrasions. The emergency room treating physician described Tommy Fulce's injuries as potentially life threatening. The Fulces were both wearing their seatbelts when the accident occurred.

Law enforcement responded to the accident scene and spoke to defendant, who had red, watery eyes and a faint odor of alcohol emanating from his person. Defendant did not seem rational or coherent when speaking with law enforcement at the accident scene.

Defendant was transported to a hospital where his blood was drawn approximately one hour after the accident. Defendant had a blood alcohol level of 0.17 percent.[2]

Defendant's passenger, Bender, also sustained injuries as a result of the accident. At trial, Bender testified defendant picked him up at his residence and drove him back to defendant's residence at approximately 4:20 or 4:30 a.m. on the morning of the accident. Bender, who was already intoxicated from the night before, had a few alcoholic drinks at defendant's house. Bender thought defendant might have had "a shot or two" after Bender arrived at defendant's residence, but he was not sure.

Defendant was driving Bender home when the accident occurred. Bender testified he passed out in defendant's car on the way home and woke up in the ambulance. At the hospital, Bender informed a police officer he did not recall seeing defendant consume any alcoholic beverages while they were together.

Based on digitally recorded information downloaded from the air bag control module of defendant's vehicle, defendant was traveling approximately 74 miles per hour at approximately two seconds before impact. Based on accident reconstruction, law

---

[2] Defendant's blood sample also tested positive for marijuana at 20 nanograms per milliliter.

enforcement believed defendant was driving between 68 and 79 miles per hour just prior to the accident. At the intersection in question, White Lane had a speed limit of 50 miles per hour.

According to the forensic alcohol analyst, Corina Anderson, alcohol in a person's blood system in an amount greater than 0.05 percent can impair a motorist by reducing his ability to respond to new phenomena and slowing down the ability to make decisions. Based on "generalized elimination rates" and other factors, Anderson concluded defendant's blood alcohol level at 8:00 a.m. on January 22, 2012, was between 0.18 and 0.20 percent. Anderson opined defendant's blood alcohol level of 0.17 percent one hour after driving reflected impairment when he drove earlier. She also opined that a person of defendant's general height and weight would have consumed 10 ounces of hard liquor, maybe three to four standard mixed drinks or shots of about an ounce and one-half, to reach a blood alcohol concentration of 0.17 percent.

### *Defense evidence*

Defendant testified on his own behalf and stated he drank alcohol for about two to three hours on the night before the accident. He drank Hennessy mixed with a Monster Energy drink and ice. Defendant did not measure when he made the drinks but he tried to get "half and half" when he poured. He drank from a four inch glass and claimed he had only two drinks. He also claimed he stopped drinking at 9:30 or 10:00 p.m. on the Saturday night before the accident and had no more alcohol after that time. Defendant denied ingesting any drugs, but said his girlfriend may have smoked marijuana that night before they went to bed around 11:00 p.m.

At around 2:00 a.m., Bender called defendant asking if he could stay at defendant's residence because Bender had a fight with his girlfriend. Defendant drove to Bender's residence and brought him back to his place. Defendant fell back asleep and was awakened around 7:30 a.m. by Bender who was asking to go home. Defendant

showered, dressed and drove Bender home. Defendant used his girlfriend's vehicle to drive.

On the way to Bender's house, defendant stopped at a convenience store to purchase cigarettes for himself and a beer for Bender. Defendant drove on White Lane and he saw the Fulces' vehicle pull into his lane of travel as he approached the intersection at Akers Road. Defendant slammed on his brakes and swerved. Defendant claimed he saw a green light as he approached the intersection and never saw the light turn yellow or red. Defendant denied drinking on the morning of the accident, denied ingesting any drugs, and denied having any trouble driving.

On cross-examination, defendant stated he did not see the light as he entered the intersection, but he saw a green light before, and slammed on his brakes when he saw the car pull out in front of him. He did not know his rate of speed just before the accident. He stated he had his last drink before 11:00 p.m.

Dr. Robert Allan Bexton provided expert testimony regarding how Monster Energy drinks affect the body in combination with alcohol consumption. He opined the substances in a Monster Energy drink can affect the drinker physiologically by delaying the effects associated with alcohol. The ingredients delay the passage of the alcohol from the stomach to the intestine, sometimes for as much as six hours. The rate of absorption of the alcohol in the intestines to the blood stream also decreases. The absorption of alcohol can be even slower for those who smoke. Bexton testified the scientific evidence showed the motor skills of a driver are superior in those instances where the alcohol ingestion included ingredients from the Monster Energy drink rather than just alcohol ingestion alone. Further, the ingredients in Monster Energy drinks contain stimulants that counteract the alcohol, a depressant, which reduces the drinker's awareness regarding how the alcohol is affecting him.

*Closing arguments*

During closing arguments, defense counsel made the following relevant comments regarding Bexton's testimony:

> "The whole point of [Bexton's] discussion was to say, even if [you] have this high blood alcohol level, assuming it was at the time of this incident, … would you have been aware of it, and would these ingredients, perhaps, have affected your physiological reactions. That was the question.

> "And his answer was it may have masked the fact that you would have perceived that you were impaired. That was one answer.

> "So if you are hiked up on whatever—the stimulants, the caffeine, the sugar, the L-Tartrate and the L-Carnitine and the ginseng, these things, because they are stimulants, may have prevented a person from recognizing any other impairments.

> "[Bexton] didn't necessarily say you wouldn't be impaired. He said you may not have seen them. And if you are not aware you are impaired, then the question is: Can you be acting grossly negligent if you do something?"

## *DISCUSSION*

### I.     *The trial court had no sua sponte duty to instruct on a mistake of fact defense*

Defendant argues he presented a mistake of fact defense through Bexton's testimony by contending defendant's ingestion of Monster Energy drinks masked his ability to perceive alcohol impairment and gauge the level of alcohol in his blood. Defendant contends because he presented this defense in his case-in-chief and his counsel argued it at closing, the trial court should have instructed the jury sua sponte on the defense of mistake of fact. He maintains the court's failure resulted in prejudicial error.

#### A.     *Standard of review*

Generally, a crime is not committed "unless there is a union of act and either wrongful intent *or* criminal negligence. [Citations.]" (*People v. King* (2006) 38 Cal.4th 617, 622, italics added; see Pen. Code, § 20 ["In every crime … there must exist a union, or joint operation of act and intent, or criminal negligence."].) Penal Code section 26

7.

lists classes of persons deemed incapable of committing crimes, including "[p]ersons who committed the act or made the omission charged under an ignorance or mistake of fact, which disproves any criminal intent." (Pen. Code, § 26, par. Three.)

A mistake of fact defense "requires, at a minimum, an actual belief 'in the existence of circumstances, which, if true, would make the act with which the person is charged an innocent act ....'" (*People v. Lawson* (2013) 215 Cal.App.4th 108, 115 (*Lawson*), quoting *People v. Russell* (2006) 144 Cal.App.4th 1415, 1425 (*Russell*).) Moreover, for "general intent crimes" the mistaken belief must be "both actual and reasonable," while specific intent crimes or crimes involving knowledge require only an actual mistaken belief. (*Lawson*, *supra*, at p. 115.)

"In criminal cases, even in the absence of a request, a trial court must instruct on general principles of law relevant to the issues raised by the evidence and necessary for the jury's understanding of the case." (*People v. Martinez* (2010) 47 Cal.4th 911, 953, citing *People v. Breverman* (1998) 19 Cal.4th 142, 154.) "'A trial court's duty to instruct, sua sponte, on particular defenses arises "'only if it appears that the defendant is relying on such a defense, or if there is substantial evidence supportive of such a defense and the defense is not inconsistent with the defendant's theory of the case.'"' [Citation.]" (*People v. Martinez*, *supra*, at p. 953.) "[S]ubstantial evidence" means evidence of a defense, which, if believed, would be sufficient for a reasonable jury to find a reasonable doubt as to the defendant's guilt. (*People v. Salas* (2006) 37 Cal.4th 967, 982–983.) A trial court has no sua sponte duty to give a legally incorrect jury instruction. (*People v. Hawthorne* (1992) 4 Cal.4th 43, 76.)

### B.    Analysis

Defendant acknowledges his trial counsel failed to request a mistake of fact jury instruction. He argues, however, he has not forfeited or waived this issue on appeal because the trial court had an independent duty to so instruct the jury. Defendant further acknowledges that on April 4, 2013, after defendant's sentencing hearing, the Court of

Appeal held that a mistake of fact defense constitutes a pinpoint instruction that need only be given upon request and a trial court has no sua sponte duty in this regard. (*Lawson*, *supra*, 215 Cal.App.4th at pp. 118–119; accord, *People v. Petronella* (2013) 218 Cal.App.4th 945, 962–963.) To overcome *Lawson* and *Petronella*, defendant contends his trial counsel was entitled to rely on *Russell*, *supra*, 144 Cal.App.4th 1415, superseded as stated in *Lawson*, *supra*, at page 118, for the proposition the trial court had a sua sponte duty to give this instruction at the time his trial occurred.

Respondent asserts defendant has forfeited this claim by not requesting the mistake of fact instruction at trial. In the alternative, respondent argues the trial court had no sua sponte duty to give the mistake of fact instruction.

We need not decide whether or not defendant has forfeited or waived this issue on appeal after his trial counsel failed to request a mistake of fact jury instruction because, when we examine defendant's arguments on their merits, we find them unpersuasive.

In a footnote, defendant cites CALCRIM No. 3406 for a mistake of fact jury instruction. We will use this instruction for our analysis, which advises the jury as follows:

> "The defendant is not guilty of _____ *<insert crime[s]>* if (he/she) did not have the intent or mental state required to commit the crime because (he/she) [reasonably] did not know a fact or [reasonably and] mistakenly believed a fact.

> "If the defendant's conduct would have been lawful under the facts as (he/she) [reasonably] believed them to be, (he/she) did not commit _____ *<insert crime[s]>*.

> "If you find that the defendant believed that _____ *<insert alleged mistaken facts>* [and if you find that belief was reasonable], (he/she) did not have the specific intent or mental state required for _____ *<insert crime[s]>*.

> "If you have a reasonable doubt about whether the defendant had the specific intent or mental state required for _____ *<insert crime[s]>*,

9.

you must find (him/her) not guilty of (that crime/those crimes)."**3** (CALCRIM No. 3406.)

A "mistake of fact" defense negates an element of a charged crime because it disproves criminal intent. (Pen. Code, § 26, par. Three; see CALCRIM No. 3406.) However, a mistake of fact jury instruction is not appropriate where the defendant's mistaken belief does not negate an element of the crime. (See *People v. Parker* (1985) 175 Cal.App.3d 818, 821–823 [mistaken belief burglarized building was not a residence was no defense because knowledge of its residential character was not required for first degree burglary]; *People v. Velez* (1983) 144 Cal.App.3d 558, 565–566 (*Velez*) [mistake of fact defense not permissible for involuntary manslaughter where the defendant had mistaken belief gun could not be fired]; *People v. Vineberg* (1981) 125 Cal.App.3d 127, 135–136 [the defendants, who were bailees of stored silver and gold, could not rely on mistake of fact as defense after selling silver and gold in speculative transactions because the defendants had no right to sell].)

### 1. Count 1

In count 1, defendant was convicted of gross vehicular manslaughter while intoxicated. (Pen. Code, § 191.5, subd. (a).) That provision states in pertinent part: "Gross vehicular manslaughter while intoxicated is the unlawful killing of a human being without malice aforethought, in the driving of a vehicle, where the driving was in violation of Section 23140, 23152, or 23153 of the Vehicle Code, and the killing was either the proximate result of the commission of an unlawful act, not amounting to a felony, and with gross negligence, or the proximate result of the commission of a lawful act that might produce death, in an unlawful manner, and with gross negligence." (*Ibid.*)

---

**3** The bench notes to CALCRIM No. 3406 state, in relevant part: "If the defendant is charged with a general intent crime, the trial court must instruct with the bracketed language requiring that defendant's belief be both actual and reasonable."

The Supreme Court has noted Penal Code section 191.5, subdivision (a), involves gross negligence, which applies an *objective* standard: whether a reasonable person in defendant's position would have been aware of the risks involved. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1204 (*Ochoa*).) Gross negligence is "'the exercise of so slight a degree of care as to raise a presumption of conscious indifference to the consequences. [Citation.] "The state of mind of a person who acts with conscious indifferences to the consequences is simply, 'I don't care what happens.'" [Citation.]'" (*Ibid.*, quoting *People* v. *Bennett* (1991) 54 Cal.3d 1032, 1036.) The Supreme Court has noted a defendant's lack of awareness does not prevent a finding of gross negligence if a reasonable person would have been aware of the dangers presented. *(Ochoa*, *supra*, at p. 1205; see *People v. Watson* (1981) 30 Cal.3d 290, 296 ["if a *reasonable person* in [the] defendant's position would have been aware of the risk involved, then [the] defendant is presumed to have had such an awareness"]; *People v. Medlin* (2009) 178 Cal.App.4th 1092, 1103 [the "defendant's subjective awareness" is not relevant when analyzing criminal negligence]; *People v. Lara* (1996) 44 Cal.App.4th 102, 108 ["Where liability may be imposed based on 'criminal negligence,' the defendant's subjective belief or good faith is irrelevant."].)

Defendant cites no legal authority for the proposition he was entitled to a mistake of fact jury instruction specifically for involuntary manslaughter while intoxicated or generally for criminal negligence. In contrast, this court's decision in *Velez*, *supra*, 144 Cal.App.3d 558, is instructive regarding the proper refusal of a mistake of fact jury instruction in a matter involving criminal negligence.

In *Velez*, the defendant, an officer with the Huron Police Department, was convicted of involuntary manslaughter. On the day in question, the defendant returned to the station after his shift ended and removed his firearm from its holster. He removed the magazine from the weapon and the round that was in the weapon's chamber. He placed the round in the magazine and then inserted the magazine into the firearm. He placed the

11.

weapon on or near the dispatcher's desk in the front room of the station and went to change his clothing in another location. A teenaged janitor who worked at the station picked up the defendant's weapon. Another teenaged janitor also handled the defendant's weapon. Both of the janitors denied they had operated the weapon in any manner before putting it down on a desk. (*Velez*, *supra*, 144 Cal.App.3d at p. 562.)

Alice Cordero, a 16-year-old office aide at city hall, took some of the defendant's money, which the defendant observed. The defendant jokingly told her she was stealing his money and he would call a cop when she went to the front door of the police station as if to leave. The defendant picked up his firearm and pointed it at her. The weapon discharged, fatally wounding Cordero. (*Velez*, *supra*, 144 Cal.App.3d at p. 562.)

At trial, the defendant testified he fired the fatal shot but denied placing a round in the chamber of the firearm. He had absolutely no idea how a round entered the chamber.

Sergeant Kenneth Abell of the Fresno County Sheriff's Office testified that once the round was removed from the firearm's chamber, it could be fired only by manipulating the slide to place another round in the chamber. He also testified police academy trainees are told to treat all firearms as if they are loaded unless they know otherwise from a personal inspection, and trainees are instructed to refrain from all horseplay with firearms. (*Velez*, *supra*, 144 Cal.App.3d at p. 562.)

During closing arguments, defense counsel urged it was entirely reasonable for the defendant to believe the gun could not be fired. Defense counsel also emphasized one of the janitors handled the weapon, implying it was a janitor who chambered the firearm. (*Velez*, *supra*, 144 Cal.App.3d at p. 563.) Defense counsel requested, inter alia, a mistake of fact jury instruction, which the trial court refused. (*Id.* at p. 565.)

On appeal, the *Velez* court held it was not error to refuse defense counsel's request to instruct the jury regarding mistake of fact. (*Velez*, *supra*, 144 Cal.App.3d at p. 565.) The *Velez* court noted the defendant could not be found liable for involuntary manslaughter unless criminal negligence was shown. (*Ibid.*) As such, neither specific

nor general intent was required to be proven because criminal intent was "shown by the defendant's knowing and willful act." (*Ibid.*) Under the facts of the case, the *Velez* court held it was only necessary for the defendant "to fail to perceive the risk of pointing a potentially hazardous weapon" at the victim to be guilty of involuntary manslaughter (i.e., criminal negligence). (*Id.* at pp. 565–566.) Thus, the trial court properly refused a mistake of fact instruction involving the negation of criminal intent. (*Id.* at p. 566.)

Here, similar to *Velez*, defendant faced criminal liability in count 1 under a gross negligence standard and his subjective belief, while relevant for the jury to consider in determining gross negligence, did not warrant a mistake of fact jury instruction. The Supreme Court has stated that although the test for gross negligence is objective the jury should consider all relevant circumstances to determine whether a defendant acted with mere inadvertence or had a conscious disregard of the consequences. (*Ochoa*, *supra*, 6 Cal.4th at p. 1205; *People v. Bennett*, *supra*, 54 Cal.3d 1032, 1038.) The jury's ability to hear evidence about defendant's state of mind does not alter the objective standard used to convict. As such, if defendant operated his vehicle intoxicated but believed he was not impaired, the jury could still convict him for gross negligence if the jury believed a reasonable person would have appreciated the risks. (*Ochoa*, *supra*, at p. 1204.) Conversely, defendant cannot avoid liability under a mistake of fact defense simply because he held a mistaken belief about his level of impairment.

In contrast, to *Velez*, the case of *Russell*, *supra*, 144 Cal.App.4th 1415, illustrates the proper circumstances where a trial court should instruct on a mistake of fact defense. In *Russell*, the defendant took an old motorcycle that was parked outside a motorcycle repair shop. The defendant testified he believed the motorcycle was abandoned based on its condition, the fact it was parked near a fenced area containing trash bins, and his belief the repair shop put all of its motorcycles inside the shop after closing. (*Id.* at pp. 1421–1422.) The defendant appealed after he was convicted for receiving stolen property. The defendant argued the trial court had prejudicially erred in failing to instruct the jury on

13.

mistake of fact and claim of right. The Court of Appeal agreed and reversed the conviction. The *Russell* court reasoned there was substantial evidence from which the jury could have inferred the defendant believed the motorcycle had been abandoned based on the defendant's consistent testimony, the location of the motorcycle when it was taken, including its condition, and because the defendant had acted as though he was entitled to possess it. (*Id*. at pp. 1430–1431.)

Here, unlike in *Russell*, defendant could not avoid liability based on his subjective mistake of fact. As in *Velez*, defendant was never entitled to a mistake of fact jury instruction in count 1 because his subjective intent or belief was not an element necessary for conviction. (Pen. Code, § 191.5, subd. (a); CALCRIM No. 3406; see *Ochoa*, *supra*, 6 Cal.4th at p. 1205 [defendant's lack of awareness does not preclude gross negligence]; *Velez, supra,* 144 Cal.App.3d at pp. 565–566.)

### 2. *Defendant cannot establish any prejudice*

Even if the "intent" referenced in CALCRIM No. 3406 was an element for gross vehicular manslaughter while intoxicated, defendant was not prejudiced by the absence of the instruction. The jury was instructed under CALCRIM No. 592 that "[g]ross negligence involves more than [ordinary] carelessness, inattention or *mistake in judgment*." (Italics added.) Thus, the jury was instructed to consider whether defendant committed gross negligence or not in light of his alleged mistake in judgment. In rendering its verdict, the jury rejected defendant's position.

Further, any alleged error in failing to give CALCRIM NO. 3406 was plainly harmless. Conviction of gross vehicular manslaughter under Penal Code section 191.5 requires more than showing defendant drove under the influence and violated traffics laws. Instead, the jury examines all relevant factors, "including the manner in which the defendant operated his vehicle, the level of his intoxication, and any other relevant aspects of his conduct." (*Ochoa*, *supra*, 6 Cal.4th at p. 1207.) Defendant did not suffer any prejudice from the alleged error in light of his high level of intoxication, his

excessive speed just before impact, and his failure to see the red traffic light before entering the intersection. There is no reasonable probability the jury would have reached a more favorable verdict if the instruction had been given. (*People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*); *Russell*, *supra*, 144 Cal.App.4th at p. 1431 [erroneous failure to instruct on mistake of fact defense is subject to harmless error test set forth in *Watson*].)

### 3. Counts 2 and 3

For counts 2 and 3, defendant was convicted of driving under the influence and causing bodily injury (Veh. Code, § 23153, subd. (a)), and driving with an excessive blood alcohol level causing injury (*id.*, subd. (b)), respectively. The elements necessary for conviction are as follows—for Vehicle Code section 23153, subdivision (a), the prosecutor must prove: "'(1) driving a vehicle while under the influence of an alcoholic beverage or drug; (2) when so driving, committing some act which violates the law or is a failure to perform some duty required by law; and (3) as a proximate result of such violation of law or failure to perform a duty, another person was injured. [Citation.] [Vehicle Code s]ection 23153, subdivision (b), has the same elements except the first element is expressed as driving a vehicle "while having 0.08 percent or more, by weight, of alcohol in his or her blood .…" [Citation.] To satisfy the second element, the evidence must show an unlawful act or neglect of duty *in addition* to driving under the influence.' [Citation.]" (*People v. Weems* (1997) 54 Cal.App.4th 854, 858, fn. omitted.) "The unlawful act or omission 'need not relate to any specific section of the Vehicle Code, but instead may be satisfied by the defendant's ordinary negligence. [Citations.]'" (*Ibid.*, quoting *People v. Hernandez* (1990) 219 Cal.App.3d 1177, 1185.)

It is a general intent crime to violate Vehicle Code section 23153, subdivisions (a) or (b). (*People v. Mathson* (2012) 210 Cal.App.4th 1297, 1312–1313; *People v. Butler* (1986) 184 Cal.App.3d 469, 474.) Like in count 1, defendant's subjective intent or belief about his level of impairment was not an element necessary for conviction on counts 2 or

15.

3. As such, defendant was not entitled to a mistake of fact jury instruction for those charges. (See *People v. Parker*, *supra*, 175 Cal.App.3d at pp. 821–823 [mistaken belief burglarized building was not a residence was no defense because knowledge of its residential character was not required for first degree burglary]; *Velez*, *supra*, 144 Cal.App.3d at pp. 565–566 [mistake of fact defense not permissible for involuntary manslaughter where the defendant had mistaken belief gun could not be fired]; *People v. Vineberg*, *supra*, 125 Cal.App.3d at pp. 135–136 [the defendants, who were bailees of stored silver and gold, could not rely on mistake of fact as defense after selling silver and gold in speculative transactions because the defendants had no right to sell].)

Further, for a general intent crime any mistake of fact must be both reasonable and actual before it is presented to the jury. (*Lawson*, *supra*, 215 Cal.App.4th at p. 115.) In contrast, an unreasonable mistake of fact may be asserted in a specific intent crime, or a crime involving knowledge, so long as the defendant had an actual mistaken belief. (*Ibid.*) The law generally does not find a mistake of fact reasonable when it is due to voluntary intoxication. (*See People v. Geddes* (1991) 1 Cal.App.4th 448, 456 ["we question whether a mistake-of-fact defense is appropriately utilized where defendant's delusions are the product of mental illness and/or voluntary intoxication"]; *People v. Gutierrez* (1986) 180 Cal.App.3d 1076, 1081 [person who commits a crime while voluntarily drunk should not escape the consequences]; *People v. Scott* (1983) 146 Cal.App.3d 823, 832, fn. 4 [mistake of fact defense not available if the defendant's delusions were caused by voluntary intoxication].)

Here, defendant voluntarily consumed alcohol along with an energy drink and drove a vehicle with a blood alcohol level of 0.17 percent (and likely higher). Defendant believed he was okay to drive. We cannot say defendant's mistaken belief was reasonable because he voluntarily consumed alcohol and then drove a vehicle while legally impaired. Defendant, however, argues his "mistaken beliefs" were reasonable not because he consumed alcoholic beverages, but because he simultaneously consumed a

16.

nonalcoholic beverage that may have masked his impairment. This is a distinction without a difference. Whether he voluntarily consumed alcohol with or without an energy drink (or anything else that may have masked his impairment), defendant voluntarily ingested intoxicating liquor and then operated a vehicle. Thus, defendant's "mistaken belief" was not reasonable and could not have been used as a defense for any of his charges that did not involve specific intent or knowledge. (*Lawson*, *supra*, 215 Cal.App.4th at p. 115.)

Based on the above analysis, a mistake of fact jury instruction was not proper in this case for any of the charges.[4] As such, the trial court had no sua sponte obligation to give such an instruction. (*People v. Hawthorne*, *supra*, 4 Cal.4th at p. 76 [because a court "may refuse an instruction that misstates the law, it obviously has no sua sponte duty to misguide the jury"].) Thus, defendant's argument he was denied a constitutional right to present a defense is without merit. Because he has not established any error, defendant is not entitled to reversal of his convictions under either *Chapman v. California* (1967) 386 U.S. 18, 24, or *Watson*, *supra*, 46 Cal.2d at page 836.

## II.     *Defendant's conviction in count 2 should be reversed*

Regarding count 2, defendant was convicted of driving under the influence and causing bodily injury (Veh. Code, § 23153, subd. (a)). At sentencing, the trial court stayed sentence on count 2 pursuant to Penal Code section 654.

Defendant argues the trial court erred in staying the punishment as to count 2 because driving under the influence and causing bodily injury is a lesser included offense

---

[4]     Because defendant was not entitled to such an instruction, defendant cannot establish his counsel was constitutionally ineffective in not seeking the instruction. (See *People v. Cunningham* (2001) 25 Cal.4th 926, 1037–1038 [no ineffective assistance where defense counsel fails to seek an instruction to which the defendant is not entitled].) Thus, we will not address defendant's arguments his counsel rendered ineffective assistance of counsel in this regard.

17.

to the charge in count 1, gross vehicular manslaughter while intoxicated. Respondent agrees.

We accept respondent's concession as proper because the crime of gross vehicular manslaughter while intoxicated (count 1; Pen. Code, § 191.5, subd. (a)) cannot be committed without also committing the crime of driving under the influence and causing bodily injury (count 2; Veh. Code, § 23153, subd. (a)). A defendant may not be convicted of both a greater and an included lesser offense. (*People v. Pearson* (1986) 42 Cal.3d 351, 355, citing *People v. Moran* (1970) 1 Cal.3d 755, 763 ["If the evidence supports the verdict as to the greater offense, the conviction of that offense is controlling, and the conviction of the lesser offense must be reversed."].) A court must dismiss, instead of stay the sentence for, a necessarily included offense. (*People v. Pearson*, *supra*, at p. 355; *People v. Moran*, *supra*, at p. 763.) Thus, the trial court erred when it stayed the sentence in count 2. Accordingly, we order dismissal of count 2.

## DISPOSITION

Defendant's conviction in count 2 of driving under the influence and causing bodily injury (Veh. Code, § 23153, subd. (a)) is dismissed. The trial court is directed to prepare an amended abstract of judgment reflecting dismissal of count 2 and to forward a copy to the appropriate authorities. The judgment is otherwise affirmed.

_____

Kane, J.

WE CONCUR:


_____

Levy, Acting P.J.


_____

Franson, J.


18.