Filed 7/24/25  P. v. Sanchez CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RAYMOND G. SANCHEZ,<br><br>    Defendant and Appellant. | B331266<br>(Los Angeles County<br> Super. Ct. No. KA122270) |

APPEAL from a judgment of the Superior Court of Los Angeles County, David C. Brougham, Judge.  Reversed in part and Affirmed in part.

Heather Monasky, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, and Ryan M. Smith, Deputy Attorney General, for Plaintiff and Respondent.

Pretending to have a gun, defendant Raymond G. Sanchez carjacked two victims. A jury convicted Sanchez of one count of carjacking and two counts of kidnapping in the commission of carjacking. On appeal, Sanchez contends that his carjacking conviction must be reversed because it is a lesser included offense of kidnapping during the commission of carjacking. He further contends the trial court erred in responding to the jury's note during deliberations and by failing to instruct on mistake of fact. The Attorney General concedes, and we agree, that the carjacking conviction must be reversed. In all other respects, we affirm the judgment.

## FACTUAL BACKGROUND

I.  *Prosecution's Evidence*

German Jaramillo worked as a driver for a company that transports people to medical appointments. On October 12, 2019, at approximately 10:30 a.m., Jaramillo was driving Jesus Macias to a dialysis appointment in West Covina. Macias was wheelchair-bound and secured in the rear of the vehicle.

Jaramillo stopped at the intersection of Sunset Avenue and Merced Avenue in West Covina. Sanchez, walking across the street in a zigzag manner, approached the vehicle from a nearby gas station. Sanchez quickly opened the vehicle's door and hopped in the front passenger seat. Once inside, Sanchez told Jaramillo, "Drive or I will shoot you." Jaramillo did not speak English well, but he understood what Sanchez said. Jaramillo saw what he believed to be a firearm pointed at him from inside a bag Sanchez held. Sanchez looked "very aggressive" and Jaramillo felt his and Macias's lives were being threatened.

2

Because Jaramillo believed Sanchez would shoot him, he drove across the street to the emergency area of a hospital and jumped out of the vehicle. Before exiting, Jaramillo saw Macias through the rearview mirror and he looked scared. Sanchez then exited the passenger side of the vehicle, ran around the front, and climbed into the driver's seat. Sanchez drove the vehicle quickly in a zigzagging pattern into the street and stopped in a courthouse parking lot. Jaramillo reached the courthouse parking lot a few minutes later and Sanchez was nowhere in sight. The police arrived at the lot at the same time as Jaramillo.

Jaramillo approached West Covina Police Officer Abel Hernandez, who was part of the police dispatch, and identified himself as the driver of the carjacked vehicle. Jaramillo and Macias appeared "physically shaken" and scared. West Covina Police Officer Brenden Keim, also part of the police dispatch, saw Sanchez walking in the middle of the street and arrested him.

II. *Defense Evidence*

Sanchez testified in his own defense as follows: The morning of the incident, Sanchez went to the emergency room (ER) because he was not feeling well and was hearing voices. He wanted to make sure he had proper medication. He had been awake for two consecutive nights and had ingested methamphetamine the previous night. Before Sanchez was able to receive care, a security guard in the ER made him leave the hospital.

After leaving, Sanchez waited on a bench at a bus stop. There was a gas station across the street. Every so often, Sanchez would ask people at the gas station for the time. When Sanchez asked a man parked at the gas station for the time, the man told him "to shut the fuck up and turn [his] face [to] look the other way." The man also brandished a gun. Scared, Sanchez

3

started walking into the street, away from the gas station. He began knocking on cars, looking for help.

When Sanchez approached Jaramillo's vehicle, he heard the door unlock. Believing Jaramillo was offering assistance, Sanchez entered the vehicle. Sanchez asked Jaramillo for help and to drive him to the police station. He told Jaramillo a man with a gun was going to shoot him and might shoot Jaramillo also. Jaramillo ended up exiting the vehicle and Sanchez got into the driver's seat so he could drive to the police station. Sanchez arrived at the courthouse parking lot, believing it to be the police station. He then told Macias, who remained in the backseat of the vehicle, "Don't worry, I'm going to get help."

Sanchez exited the vehicle and began knocking on the courthouse doors and windows. He then made contact with an approaching police officer (presumably Officer Keim). Sanchez told the officer that there was "a family in the car parked in the police station," and that "they need your help." He also told the officer he took the vehicle because a man was trying to shoot him. At the time of the incident, Sanchez was under the influence of methamphetamine, marijuana, heroin, and alcohol.

III.  *Rebuttal Evidence*

In rebuttal, Officer Keim testified that Sanchez did not attempt to speak with him. Instead, Sanchez was trying to cross the street when Officer Keim arrested him. After his arrest, Sanchez told Officer Keim that God had directed him to take Jaramillo's vehicle. As Sanchez approached the vehicle, he noticed a driver in the front seat. Because the driver looked intimidating, Sanchez "had a white plastic bag, and he put his hand in it to make it look like he had a firearm." He then told Jaramillo to get out of the vehicle or he

4

was "going to fuckin' kill him." Jaramillo exited the vehicle. Sanchez got into the vehicle and noticed a passenger in the backseat. He told the passenger he was not going to harm him and then drove to the police station. When he arrived at the police station, Sanchez exited the vehicle. Sanchez never mentioned being threatened by a man with a gun.

## PROCEDURAL HISTORY

A jury found Sanchez guilty of one count of carjacking Jaramillo (Pen. Code, § 215, subd. (a), count 1),[1] and two counts of kidnapping during the commission of carjacking (§ 209.5, subd. (a), count 2 [Jaramillo] & count 3 [Macias]). In a bifurcated proceeding, the trial court found true two strike priors. The court sentenced Sanchez to 25 years to life in state prison.

Sanchez timely appealed.

## DISCUSSION

I.    *Carjacking Conviction*

Sanchez contends, and the Attorney General concedes, the carjacking conviction on count 1 should be reversed because carjacking is a lesser included offense of kidnapping during the commission of carjacking, the offense of conviction on counts 2 and 3. We agree.

"When a defendant is found guilty of both a greater and a necessarily lesser included offense rising out of the same act or course of conduct, and the evidence supports the verdict on the greater offense, that conviction is controlling, and the conviction of the lesser offense must be reversed.

---

[1]    All further statutory references are to the Penal Code unless otherwise stated.

5

[Citations.]" (*People v. Sanders* (2012) 55 Cal.4th 731, 736.) Carjacking is a lesser included offense of kidnapping during the commission of carjacking. (*People v. Montes* (2014) 58 Cal.4th 809, 898; *People v. Contreras* (1997) 55 Cal.App.4th 760, 765.) Moreover, all three counts in this case arose out of the same course of conduct, and Sanchez does not challenge his kidnapping during the commission of carjacking convictions. Therefore, we reverse the carjacking conviction in count 1.[2]

II. *The Trial Court's Response to The Jury's Note During Deliberations*

Sanchez contends the trial court's response to a jury note, advising them to continue deliberating, "was not responsive to the jury's questions" in violation of section 1138.

A. *Relevant Proceedings Below*

On April 25, 2023, at 2:05 p.m., the jury began deliberations. The jury stopped deliberating less than two hours later, at 4:00 p.m. When it resumed the following morning, at 9:30 a.m., the jury sent the trial court the following note: "If the jury cannot come to a unanimous decision what do we put on the verdict form? Are we a hung jury or do we need to keep deliberating? We were able to come to a unanimous decision on one count but not on the other two." At a hearing outside the presence of the jury, defense counsel argued that the note indicated the jury was hung. Therefore, the trial court should declare a mistrial. The court responded that if the jury stated "they're hung . . . I'll go from there, but they haven't [said] that." The court noted it was early in deliberations and this was "a significant case for both sides."

_____

[2] Resentencing is not required as the trial court stayed imposition of the sentence on count 1 pursuant to section 654.

In the presence of the jury, the court stated that "apparently [the jury] reached a verdict on one and [the jury was still] deliberating on the other two." The court responded that the "short answer would be yes, you are to continue deliberating." The court reminded the jury that if, at any point, a juror "believe[d] that any issues . . . could be resolved by either read back by the court reporter [of the] trial transcript or by the court providing further instruction in the law, [the jury could] write that on a note and send that to [the court]." The court encouraged the jury to continue deliberating. The juror foreperson indicated that he (or she or they) did not know if the jury could come to a unanimous decision. The court stated, "Well, let's see. I'm going to ask you . . . to go back and resume your deliberations and discussions. And, again, you can always inform me of any bumps in the road." The court cautioned it was "early in the case" and "we want to make sure that you folks are able to have all the discussions you need."

A few minutes after resuming deliberations, the jury requested a read back of Sanchez's statement to police on the day of the incident and asked the trial court about the distance required for kidnapping. Shortly thereafter, the jury returned a verdict on all three counts.

B. *Analysis*

Section 1138 requires the trial court to give jurors any desired information on any point of law arising in the case and "imposes a 'mandatory' duty to clear up any instructional confusion expressed by the jury." (*People v. Gonzalez* (1990) 51 Cal.3d 1179, 1212.) But "[t]his does not mean the court must always elaborate on the standard instructions. Where the original instructions are themselves full and complete, the court has discretion under section 1138 to determine what additional explanations are

7

sufficient to satisfy the jury's request for information." (*People v. Beardslee* (1991) 53 Cal.3d 68, 97.)  The court "should decide as to each jury question whether further explanation is desirable, or whether it should merely reiterate the instructions already given." (*Ibid.*)  We review for abuse of discretion.  (*People v. Hodges* (2013) 213 Cal.App.4th 531, 539.)

The Attorney General contends that Sanchez forfeited this claim of error by failing to object to the trial court's response or to suggest additional clarifying language.  We disagree.  Before the trial court instructed the jury to continue deliberating, defense counsel argued that the jury was hung and asked the court to declare a mistrial.  In moving for a mistrial, defense counsel preserved the issue on appeal.  (*People v. Kageler* (1973) 32 Cal.App.3d 738, 746; see also *People v. Jennings* (1991) 53 Cal.3d 334, 383.)

But we reject Sanchez's claim of error on the merits.[3]  The jury's questions did not pertain to a specific jury instruction.  Instead, the jury was asking the court whether jurors qualified as a "hung jury" or "needed to keep deliberating."  The court's instruction to continue deliberating was responsive to that inquiry.  Given its directive, it was not necessary for the trial court at that point to advise the jury on how to complete the verdict form if they could not reach a unanimous decision after further deliberations.  We conclude the court did not abuse its discretion in responding to the jury note.

To the extent Sanchez argues the trial court's response to the note was coercive, again, we disagree.  In analyzing a claim of coercion, the relevant

---

[3]     On appeal, Sanchez contends the trial court violated section 1138 in responding to the jury note, not that the court violated section 1140 by having the jury continue deliberations.  Therefore, we find any reliance by Sanchez on cases addressing the application of section 1140 misplaced.  We also note Sanchez fails to indicate in his briefing to this court that this cited authority addresses a separate and distinct section of the Penal Code than the one at issue in this appeal.

inquiry is whether the trial court's comments "impose[d] such pressure on jurors to reach a verdict" that "the accuracy and integrity of the jury's stated conclusion" cannot be assured. (*People v. Gainer* (1977) 19 Cal.3d 835, 850, disapproved on another point in *People v. Valdez* (2012) 55 Cal.4th 82, 163.)

Here, the court's response to the jury note imposed no pressure on the jury. The court did not "either express or imply to the jurors that they must reach a unanimous verdict, or a particular outcome." (*People v. Brooks* (2017) 3 Cal.5th 1, 89; *Peoples v. Peoples* (2016) 62 Cal.4th 718, 783 [court's comments to jury were not coercive].) The court did not "exert pressure on any juror, nor did it express any exasperation about the jury's deliberations." (*People v. Johnson* (2015) 61 Cal.4th 734, 770.) The court simply asked the jury to deliberate further. This request was reasonable, given that the jury only had been deliberating for less than two hours. "Directing further deliberations" was a proper "'"means of enabling the jurors to enhance their understanding of the case."'" (*People v. Whaley* (2007) 152 Cal.App.4th 968, 980.) Thus, we conclude the court's response to the jury's note was not coercive and find no error.

III.    *Mistake of Fact Instruction*

Sanchez argues the trial court's failure to instruct on mistake of fact was prejudicial error. We disagree. We conclude Sanchez was not entitled to such an instruction. Moreover, any error in failing to instruct was harmless.

At trial, Sanchez made a written request for the court to provide particular jury instructions, including one on mistake of fact. Specifically, Sanchez requested the court give the general intent mistake of fact instruction. The court gave two of Sanchez's requested instructions—on necessity and duress—but did not give the mistake of fact instruction.

9

Sanchez did not object to, or argue against, the omission.  The Attorney General does not argue that Sanchez forfeited the issue of instructional error on appeal.  Thus, we elect to reach the merits of the claim.  (*People v. Fox* (2023) 90 Cal.App.5th 826, 830, fn. 4.)[4]

A trial court is required to give a particular jury instruction only when there is substantial evidence to support it.  (*People v. Avila* (2009) 46 Cal.4th 680, 705.)  We review a claim of instructional error de novo.  (*People v. Mitchell* (2019) 7 Cal.5th 561, 579.)

A "mistake of fact claim . . . is often described as a 'defense' to the charge.  (See, e.g., *People v. Hanna* (2013) 218 Cal.App.4th 455, 462.)  But the term is somewhat misleading, because mistake of fact is, generally speaking, 'not a true affirmative defense.'  ([*People v. Lawson* (2013)] 215 Cal.App.4th [108], 118 [(*Lawson*)].)  It is, rather, an assertion by the defendant that a particular factual error in his perception of the world led him to lack the mens rea required for the crime.  (See § 26, par. Three [persons are not capable of committing crimes if they 'committed the act . . . under an ignorance or mistake of fact, which disproves any criminal intent']; *Lawson,* [*supra,*] at p. 111 ['The mistake-of-fact defense operates to negate the requisite criminal intent or mens rea element of the crime']; *People v. Anderson* (2011) 51 Cal.4th 989, 996–998 [same conclusion with respect to similar 'defense' of accident]; . . .)"  (*People v. Hendrix* (2022) 13 Cal.5th 933, 940, fn. omitted (*Hendrix*).)  Mistake of fact "requires, at a minimum, an

[4]      Because the offenses with which Sanchez was charged are specific, not general, intent crimes, there was no basis in law for the general intent mistake of fact instruction Sanchez requested.  Nonetheless, we construe Sanchez's claim of error on appeal as extending to an appropriate mistake of fact instruction.  Here, this means the specific intent mistake of law instruction.

10

actual belief "in the existence of circumstances, which, if true, would make the act with which the person is charged an innocent act . . . .'" [Citations.]" (*People v. Givan* (2015) 233 Cal.App.4th 335, 343.) For general intent crimes, the mistaken belief must be both actual and reasonable, while specific intent crimes—such as carjacking and kidnapping in the commission of carjacking— "require only an actual mistaken belief." (*People v. Givan, supra,* at p. 343.)

In *Hendrix, supra*, 13 Cal.5th at page 940, our Supreme Court illustrated the application of mistake of fact to a specific intent crime: "Say a defendant is charged for theft of a box of oranges. [Citation.] He claims he mistakenly thought the oranges were his. If the defendant indeed believed the oranges were his, it is necessarily true that he did not intend to steal them from someone else. His mistake of fact claim, then, is simply one particular way of saying he lacked the mens rea required for theft. [Citation.] In this way mistake of fact operates as a kind of failure-of-proof defense, reflecting a defendant's attempt to suggest the prosecution failed in its burden to establish beyond a reasonable doubt that the defendant acted with the criminal intent required for the offense." Thus, "saying a defendant established a mistake-of-fact defense is the equivalent of saying the People failed to prove defendant acted with the requisite intent." (*People v. Middleton* (2023) 91 Cal.App.5th 749, 767.)

Applying this doctrine to the case at hand, we first look to the underlying crime of carjacking to determine the requisite mental state for kidnapping during the commission of carjacking.[5] (*People v. Contreras* (1997) 55 Cal.App.4th 760, 765 [Section 209.5, kidnapping during the commission of

---

[5] In discussing the mistake of fact instruction, neither party discussed the requisite mental state required to commit carjacking or kidnapping during the commission of carjacking.

a carjacking, requires proof of a completed carjacking].)  To be convicted of carjacking, the defendant must intend to deprive the other person of possession of the vehicle either temporarily or permanently.  (*People v. Vargas* (2002) 96 Cal.App.4th 456, 460, citing section 215, subd. (a)).  Thus, to find error in the court's failure to give the mistake of fact instruction, we must find substantial evidence that Sanchez's alleged mistake of fact would negate this intent.

On appeal, Sanchez contends his mistake was that he "believed Jaramillo consented to help him by unlocking the [vehicle's] door."  Based on our review of the record of conviction, however, harboring this mistaken belief would not negate his intent to deprive Jaramillo of his vehicle, either temporarily or permanently.  (See *People v. Givan, supra,* 233 Cal.App.4th at p. 345 ["a mistake of fact jury instruction is not appropriate where the defendant's mistaken belief does not negate an element of the crime"].)  Therefore, we conclude Sanchez's asserted mistake of fact did not justify the instruction.

Alternatively, we find any error in failing to instruct on mistake of fact to be harmless.  In deciding whether instructional error was prejudicial, we apply *People v. Watson* (1956) 46 Cal.2d 818, 836, to determine whether it is reasonably probable that the outcome would have been different in the absence of the error.  (*Hendrix, supra*, 13 Cal.5th at p. 942.)  As a general matter, this test applies to """incorrect, ambiguous, conflicting, or wrongly omitted instructions that do not amount to federal constitutional error."""" (*People v. Beltran* (2013) 56 Cal.4th 935, 955.)[6]

---

[6]     In contrast, the stricter test for federal constitutional error under *Chapman v. California* (1967) 386 U.S. 18 would govern if the instructional error had relieved the prosecution of its burden of proving an element of the crime.  (See *Hendrix, supra*, 13 Cal.5th at p. 943.)

Here, Sanchez testified that he came upon Jaramillo's vehicle after fleeing a man who threatened him with a firearm. According to Sanchez, Jaramillo offered to help by unlocking the vehicle's door. Sanchez asked Jaramillo to drive him to the police station because someone was trying to shoot him and might shoot Jaramillo also. But in his testimony, Sanchez never explained why Jaramillo exited the vehicle before arriving at the police station and why he then got into the driver's seat and drove away in the vehicle.

Moreover, the balance of the evidence introduced at trial refutes Sanchez's testimony. Jaramillo testified that Sanchez forcibly entered his vehicle, pointed what Jaramillo believed to be a firearm at him, and then ordered Jaramillo to drive or be shot. Jaramillo abandoned his vehicle after a short distance out of fear. Officer Hernandez corroborated this testimony by testifying that Jaramillo told him he was carjacked, and that both Jaramillo and Macias were visibly upset after the incident. Officer Keim further corroborated Jaramillo's testimony by testifying Sanchez stated upon his arrest that God directed him to take Jaramillo's vehicle. Sanchez also admitted that he pretended to have a firearm and ordered Jaramillo out of the vehicle under threat of death. Sanchez said nothing about another man threatening him with a gun.

Accordingly, we conclude there is no reasonable probability that Sanchez would have obtained a more favorable outcome but for the alleged instructional error.

//

//

//

//

13

//

## DISPOSITION

We reverse the carjacking conviction on count 1.  The judgment is otherwise affirmed.

The trial court is directed to amend the abstract of judgment to reflect the reversal of the conviction on count 1 and to forward a certified copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


GARCIA UHRIG, J.*

WE CONCUR:


COLLINS, Acting P. J.


MORI, J.

---

*Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.