Filed 12/28/15  P. v. Guerra CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B254840 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA389571) |
| v. | |
| FREDY GUERRA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Clifford L. Klein, Judge.  Affirmed with directions.

David D. Carico, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven D. Matthews and David E. Madeo, Deputy Attorneys General, for Plaintiff and Respondent.

_____

# INTRODUCTION

Fredy Guerra appeals from a judgment of conviction entered after a jury found him guilty of second degree murder (Pen. Code, § 187, subd. (a)) and found true the allegations he personally used a firearm in the commission of the crime (*id*., § 12022.5, subd. (a)) and personally and intentionally discharged a firearm in the commission of the crime, causing great bodily injury or death (*id*., § 12022.53, subd. (d)). The trial court sentenced Guerra to 15 years to life for the murder plus 25 years to life for the discharge of a firearm causing great bodily injury or death. It stayed sentence on the firearm use enhancement.

On appeal, Guerra contends the trial court erred in refusing to instruct the jury sua sponte on justifiable homicide in resistance of a forcible and atrocious felony, voluntary manslaughter based on an actual but unreasonable belief of imminent danger of death or great bodily injury, and that the firearm enhancement would not apply if the victim was an accomplice to brandishing and discharge of a firearm from a motor vehicle. He also contends he was deprived of the effective assistance of counsel by his attorney's failure to request these instructions. Finally, Guerra claims the abstract of judgment must be corrected to delete the sex offender registration requirement (Pen. Code, § 290, subd. (c)). We affirm the judgment of conviction and order that the abstract be corrected.

# FACTUAL BACKGROUND

## A. *The Prosecution's Case*

Guerra lived with his wife and four children on the second floor of a duplex at 232 West 50th Street in Los Angeles. His father-in-law owned the property and lived on the first floor of the duplex. Carlos Flores lived in a trailer on the back of the property.

On the afternoon of Sunday, October 2, 2011, Guerra's father-in-law, Flores, Norberto, who also lived on the property, and Ramon,[1] a neighbor, were sitting on the front porch, drinking beer. Rodolfo Pineda later joined them. Flores and Pineda had four or five beers each. Ramon and Flores drove Pineda to Southgate to deliver some money. On the way back, they stopped and purchased $20 worth of cocaine, which they ingested while they were in the car.

Ramon, Flores and Pineda returned to the duplex. Guerra joined them at about 6:00 p.m. Guerra and Pineda knew each other, but they did not get along. Guerra and Pineda often engaged in verbal sparring, but on this occasion they began grabbing each other by the neck. Flores told them to stop and eventually they did. Guerra's father-in-law and Ramon left.

Guerra had a bag of cocaine, and he, Flores, and Pineda went to Flores' trailer and ingested some of the cocaine. They also drank beer. At about 8:30 p.m., they decided to drive to the liquor store to buy more beer. Guerra drove them in his wife's SUV, with Pineda in the front passenger seat and Flores in the back seat behind Pineda. When they got to the liquor store, Pineda went inside to buy beer. Flores followed him because he thought Pineda was too intoxicated to buy the beer. Guerra also went inside the store.

They returned to the SUV, took their same seats, and Guerra began driving toward the duplex. Instead of turning on 50th Street, he turned on 51st Street and then drove onto the Harbor Freeway, heading south. At that point, Flores saw that Guerra had a .38 caliber handgun in his hand. Guerra reached outside the SUV with the gun and fired a shot into the air. Pineda said he wanted to fire the gun. Guerra told him that he was not competent to shoot the gun, meaning Pineda was too intoxicated to shoot it. Guerra got off the freeway at Vernon Avenue and fired another shot into the air. Pineda kept telling Guerra that he wanted to shoot the gun, and Guerra kept telling him he was not competent and refused to allow him to do so.

---

[1] The record is silent as to the last names of Norberto and Ramon.

Guerra drove back to the duplex. Flores got out of the SUV to open the gate, and Guerra drove up the driveway and parked. Flores closed the gate and walked back to where Guerra was parked. Guerra and Pineda had been arguing about the gun and were angry with one another. Guerra grabbed Pineda's head and told him, "no." They began head-butting one another forehead to forehead. After a few minutes, Flores told them to stop, and they sat back in their seats.

Pineda was then facing forward in his seat. Pineda said, "I don't give a fuck if I die." Guerra asked, "You don't give a fuck if you die?" Guerra then lifted the gun, put it to the back of Pineda's head, and fired a single shot. Pineda slumped forward. Flores said, "You just killed [Pineda] dumbass. What did you do, dumbass?" Guerra told him, "You killed him."

Flores went to the duplex, knocked on the door and told the lady inside to call the police. At the same time, Guerra called 911. He told the operator that "somebody killed someone right now, at 232 50th Street." He said that a weapon was used, he did not know what kind, and the victim was in the SUV. Guerra then went upstairs to his home on the second floor of the duplex. Flores yelled at him and told him to "come down, dumbass. The same way that you killed [Pineda], come and kill me." Guerra's wife came downstairs, and Flores told her what happened. She told Flores to stop screaming.

When the police arrived, Flores was waving his arms to flag them down. He appeared to be angry and hysterical. He told them "Fredy just shot my friend." He pointed to Guerra, who was standing in the driveway, and said, "That's Fredy." Guerra quickly went upstairs.

Officers found Pineda in the SUV with a single gunshot wound to the left side of the back of his head. Paramedics transported Pineda to the hospital, where he received emergency treatment but died from the gunshot wound. A blood test revealed a blood alcohol level of .19 and the presence of cocaine.

Los Angeles Police Detective Michael Terrazas responded to the scene. He observed blood spatter in the front seat of the SUV and on Guerra's shirt and hat. Tests confirmed that the blood on the shirt and hat matched Pineda's.

4

Detective Ronald Berdin collected gunshot residue samples from Guerra and Flores. There was gunshot residue on both of Guerra's hands. There was no residue on Flores' hands.

The police transported both Guerra and Flores to the police station, where they were interviewed separately. In his interview, Flores explained what had happened. In his interview, Guerra said that he did not fire a weapon or kill Pineda. He said he was upstairs in the duplex when he heard a gunshot.

The police then placed Guerra and Flores together in an interview room and recorded their conversation. Flores asked Guerra why he was accusing him of killing Pineda when he knew that he did it. Guerra responded, "That I know I did it?" Flores said, "You did it." Guerra responded, "I did it?" Flores asked, "And who did it? Who pulled out the gun," and "Who . . . was shooting in the street, then?" Guerra responded, "I have a weapon, or you have a weapon?" Flores told him, "You have a weapon, I don't." He also said Guerra had a "bad head" and "did not think." Guerra responded, "'Bad head because you did not think.' . . . You are the one who is saying that I did it." Flores said, "But you did it." Eventually, Guerra said he was not going to argue with Flores and would talk when the detective arrived.

## B. *The Defense Case*

Guerra testified in his own defense; he was the only defense witness. According to Guerra, on the morning of October 2, 2011, he took his wife and children to a big box store to buy some movies. Before leaving, he put a gun in the glove compartment of his wife's SUV, because he lived in a dangerous neighborhood. His uncle had given him the gun a couple of weeks earlier. He did not know how to use it and had never fired it, but his uncle had given him an instruction manual.

Guerra and his family returned home about 3:30 p.m. He played in the backyard with two of his children while his wife and the other children ran errands. Guerra did not remove the gun from the glove compartment.

5

Guerra's father-in-law, Flores, Pineda, Norberto, and Ramon were drinking beer in a corner of the yard. Guerra eventually joined them and had a few beers. By 7:00 p.m., only Guerra, Flores, and Pineda remained. Flores and Pineda asked Guerra to drive them to the liquor store. He drove them in his wife's SUV. Pineda, who was in the front passenger seat, opened the glove compartment to look for some CDs and found the gun. He took it out and said, "Look what I found." Guerra immediately took it from him. Pineda asked for it back, because he wanted to shoot it. Guerra held onto it until they arrived at the liquor store. After Pineda and Flores got out of the SUV, Guerra put the gun under his seat.

After they returned to the SUV, Pineda kept pestering Guerra for the gun all the way back to the duplex. Guerra was concerned that the gun was not secure under his seat, so he put it under his right leg. Pineda kept trying to pull the gun out from under Guerra's leg. Guerra did not drive on the freeway or shoot the gun on the way back to the duplex.

Flores got out of the SUV to open the gate when they got back to the duplex. Guerra drove up the driveway and parked. Pineda kept insisting that Guerra give him the gun. Flores got back into the SUV because he wanted to keep drinking in the vehicle. Guerra's children called out to him from upstairs to come inside for dinner and to watch movies. Flores got out of the SUV and told Pineda, "Get out of the car, trash." Pineda told Flores to leave him alone and kept asking for the gun. Hoping to calm Pineda down, Guerra told him, "You're not competent to shoot it. Another day when you're well, probably." Pineda asked, "You're not going to give it to me?" Guerra, told him, "No, I have to go up." Pineda asked again, and Guerra told him "no. Another day."

Guerra pulled the keys out of the ignition and tried to get out of the car. Pineda told him, "You're worth shit," and lunged at him. Pineda grabbed the gun and pulled it away from Guerra. Guerra grabbed the gun and the two of them struggled to get hold of the gun. Guerra kept telling Pineda to calm down, and Pineda kept telling him, "I give a fuck if I die." Pineda started head butting him; Pineda and Guerra were forehead to forehead. After a couple of minutes, Pineda stopped and jerked backwards, pulling

6

Guerra toward him. The gun went off, and Pineda slumped back into the seat. Guerra was paralyzed and in shock that the gun had gone off. The gun had gone off accidentally, his finger was not on the trigger.

Eventually, Guerra let go of the gun, checked Pineda's pulse, then called 911. When he got out of the SUV, he put the gun on top of the vehicle. Flores accused him of shooting Pineda. He was in shock and did not remember if he responded to Flores. When the police arrived, he went upstairs to tell his family what had happened. He then went downstairs, and the police handcuffed him and placed him in a patrol car.

Guerra was still in shock when he was interviewed at the police station. He acknowledged lying to the police about the shooting because he was afraid for his family. He could not remember his conversation with Flores.

## C. *The Prosecution's Rebuttal Case*

Detective Julio Benavides and Detective Terrazas attempted to locate the gun used in the shooting but were unable to do so. Detective Benavides participated in the interviews at the police station. Guerra seemed nervous and unconcerned about Pineda. Flores was eager to talk to the police and expressed shock over Pineda's death.

## DISCUSSION

## A. *Failure To Instruct on Justifiable Homicide in an Attempt To Resist a Felony*

1. *Proceedings Below*

While discussing jury instructions, the trial court declared it was going to instruct with CALCRIM No. 500 on general homicide principles and, at the People's request, CALCRIM No. 510 on excusable homicide due to accident. The trial court also stated it would instruct on first or second degree murder and the effect of provocation (CALCRIM Nos. 520, 521, 522). Finally, the trial court indicated it would instruct on voluntary manslaughter based on heat of passion (CALCRIM No. 570), over the People's

7

objection, as well as involuntary manslaughter (CALCRIM No. 580). Defense counsel did not object to these instructions or request additional instructions.

Defense counsel specifically informed the court that he was not requesting an instruction on self-defense. The trial court therefore declined to instruct the jury on self-defense.

Guerra contends the trial court erred in failing to instruct the jury, sua sponte, on justifiable homicide in an attempt to resist a forcible and atrocious felony.

2. *Applicable Law*

"'In criminal cases, even in the absence of a request, a trial court must instruct on general principles of law relevant to the issues raised by the evidence and necessary for the jury's understanding of the case.' [Citations.] '"A trial court's duty to instruct, sua sponte, on particular defenses arises '"only if it appears that the defendant is relying on such a defense, or if there is substantial evidence supportive of such a defense and the defense is not inconsistent with the defendant's theory of the case."'" [Citation.]' [Citation.] '[S]ubstantial evidence' means evidence of a defense, which, if believed, would be sufficient for a reasonable jury to find a reasonable doubt as to the defendant's guilt. [Citation.]" (*People v. Givan* (2015) 233 Cal.App.4th 335, 343-344; accord, *People v. Martinez* (2010) 47 Cal.4th 911, 953.)

Penal Code section 197 provides in part: "Homicide is also justifiable when committed by any person in any of the following cases: [¶] 1. When resisting any attempt to murder any person, or to commit a felony, or to do some great bodily injury upon any person." Although section 197 refers to "a felony," case law has clarified that the felony must be a forcible and atrocious crime that endangers human life. (*People v. Ceballos* (1974) 12 Cal.3d 470, 477-479.)

In order for a killing to constitute justifiable homicide, the defendant must be in fear "'of *imminent* danger to life or great bodily injury.'" (*People v. Humphrey* (1996) 13 Cal.4th 1073, 1082; see *People v. Robertson* (2004) 34 Cal.4th 156, 167-168, overruled on another ground in *People v. Chun* (2009) 45 Cal.4th 1172, 1201; *People v. Minifie*

8

(1996) 13 Cal.4th 1055, 1068-1069; *People v. Ceballos*, *supra*, 12 Cal.3d at pp. 477-478.) A defendant may use deadly force to prevent the commission of a crime, but "[w]here the character and manner of the [crime] do not reasonably create a fear of great bodily harm, there is no cause for exaction of human life [citations], or for the use of deadly force [citation]." (*Ceballos*, *supra*, at p. 479.)

     3. *Analysis*

     Guerra contends that there is substantial evidence[2] that he shot Pineda in resisting an attempt to commit robbery and discharging a firearm in a negligent manner, requiring the trial court to instruct sua sponte on justifiable homicide in resisting the commission of a felony. We disagree.

     Robbery requires "(1) a taking of personal property, (2) from the person or immediate presence of another, (3) through the use of force or fear, (4) with an intent to permanently deprive the owner of his property. [Citations.]" (*People v. Kelley* (1990) 220 Cal.App.3d 1358, 1366; accord, *People v. Clark* (2011) 52 Cal.4th 856, 943; see also CALCRIM No. 1600.) Both the prosecution and the defense evidence established that Pineda merely wanted to shoot the gun; there was no evidence Pineda intended to permanently deprive Guerra of the gun.[3] Thus, there is no substantial evidence Guerra shot Pineda while resisting an attempt to commit a robbery.

     "[W]illfully discharg[ing] a firearm in a grossly negligent manner which could result in injury or death" is punishable as either a misdemeanor or a felony. (Pen. Code,

---

[2]     In arguing substantial evidence supported an instruction on justifiable homicide, Guerra appears to be conceding that he did not rely on that defense in trial. (See *People v. Givan*, *supra*, 233 Cal.App.4th at p. 343.)

[3]     We are not persuaded by Guerra's argument that there was evidence Pineda intended to deprive Guerra of the value of the gun thereby satisfying the permanent deprivation of property element of the crime. Guerra's argument that the firearm would have been confiscated by the police if it had been used in the commission of a crime is speculative and does not demonstrate Pineda's intent.

§ 246.3, subd. (a).) There was some evidence from which the jury could have found that Guerra killed Pineda while resisting Pineda's attempt to willfully discharge a firearm in a grossly negligent manner. Pineda kept demanding to shoot the gun, and Guerra believed Pineda was not competent, i.e., too intoxicated, to do so.

Guerra points to no evidence, however, he feared that Pineda's actions posed an imminent danger to his life or the lives of others.[4] He argues that under the circumstances, he "likely would have believed that Pineda was a threat." "Speculation is not substantial evidence. [Citation.] '"To be sufficient, evidence must of course be substantial. It is such only if it '"reasonably inspires confidence and is of 'solid value.'"' By definition, 'substantial evidence' requires *evidence* and not mere speculation. In any given case, one 'may *speculate* about any number of scenarios that may have occurred . . . . A reasonable inference, however, may not be based on suspicion alone, or on imagination, speculation, supposition, surmise, conjecture, or guess work. . . . A finding of fact must be an inference drawn from evidence rather than . . . a mere speculation as to probabilities without evidence.'"' [Citation.]" (*People v. Ramon* (2009) 175 Cal.App.4th 843, 851; accord, *People v. Hajek and Vo* (2014) 58 Cal.4th 1144, 1264 (conc. & dis. opn. of Kennard, J.); *People v. Gonzales* (2015) 232 Cal.App.4th 1449, 1466.)

Guerra also argues that he was justified in shooting Pineda because "when Pineda took the gun from [Guerra] his intent was to fire it in a residential area with people present," thus posing a threat to human life. Guerra relies on *People v. Alonzo* (1993) 13 Cal.App.4th 535, in which the defendant was charged with willfully discharging a

---

[4] We acknowledge the trial court offered to give an instruction on self-defense. On this record, however, the instruction was unwarranted. Guerra was not relying on self-defense in defending the case, self-defense was inconsistent with his theory of the case that the shooting was accidental and his counsel refused the instruction. Substantial evidence did not support the defense as there was no evidence Guerra feared for his own life or the lives of others and a reasonable jury could not have so concluded based on Guerra's testimony. (*People v. Elize* (1999) 71 Cal.App.4th 605, 615.)

10

firearm in a grossly negligent manner which could result in injury or death after he shot a gun into the air in a commercial area at 2:00 a.m. There were several businesses open in the area at the time, and a witness testified that there was a lot of pedestrian traffic and the area was "'quite busy[.]'" (*Id.* at p. 538.) The court concluded the defendant's conduct was grossly negligent and "presented the possibility of hitting a member of the public" under the circumstances of the case. (*Id.* at p. 540.)

Here, according to Guerra's testimony, Pineda lunged at Guerra as Guerra moved to get out of the SUV. Pineda had control of the gun, if at all, for a moment. Thereafter, Guerra grabbed the gun and a struggle ensued when Pineda "was trying to take it away from [Guerra]." Pineda did not have possession of the gun, and therefore he had no ability to discharge it in a residential area with people present.

Without regard to Pineda's lack of control over the gun, however, while the shooting occurred in the driveway of the duplex where Guerra resided with his family, there was no evidence as to whether there were people actually present in the area on that late Sunday evening, where they were in relation to Pineda, and the possibility they would be in danger from Pineda's actions. After the shooting, Flores went to the first floor of the duplex and knocked on the door to get help. Guerra went inside his home. Guerra testified that "the first person [he] saw was one of [his] children" when he "went upstairs." Nothing suggested anyone other than Guerra, Pineda and Flores were in the vicinity of the shooting. There was no evidence Guerra actually believed Pineda posed an imminent threat to residents in the neighborhood and shot him to prevent him from carrying out that threat.

Absent substantial evidence that Guerra shot Pineda in resisting Pineda's attempt to discharge a firearm in a negligent manner because Guerra believed Pineda posed an imminent danger to life, the trial court was not required to instruct sua sponte on justifiable homicide in resisting the commission of a felony. (*People v. Martinez*, *supra*, 47 Cal.4th at p. 953; *People v. Givan*, *supra*, 233 Cal.App.4th at pp. 343-344.)

11

**B.** *Failure To Instruct on Voluntary Manslaughter Based on Unreasonable Self-Defense or the Use of Unreasonable Force in Resisting a Felony*

1. *Proceedings Below*

In discussing instruction on voluntary manslaughter, the trial court discussed *People v. Barton* (1995) 12 Cal.4th 186 and *People v. Elize*, *supra*, 71 Cal.App.4th 605, and stated, "[i]n both [of those] cases, the defendant said the gun went off accidentally, not intentionally. And the court said that—especially in *Barton*[—]that you still had to give a lesser included voluntary manslaughter [instruction] because the jury could believe the evidence of the struggle and not believe the discharge was accidental. That's certainly something that could happen in this case and, therefore, they could look at the intentional shooting in a struggle and find the lesser included. That's what *Barton* holds."

The trial court also noted that "[i]n *Elize*, the court said that the self-defense instruction should have been [given] on request [and] distinguish between lesser includeds, which has to be given if the evidence is there. And self-defense, which is different—and several times, the defendant said they are not requesting self-defense. I am distinguish[ing] the *Elize* situation as to self-defense and not giving self-defense. But how do I not give voluntary manslaughter, in view of the *Barton* case?"

The court concluded there was evidence from which "the jury could believe that [Guerra] intentionally pulled that trigger. . . . And if they believe that he pulled the trigger, but they do believe there was also a struggle, that's the *Barton* case, that's the *Elize* case, then I have to give voluntary manslaughter, all right? They can believe part of this testimony if they so choose. So I am going to give voluntary manslaughter [based on heat of passion]."

2. *Applicable Law*

"A trial court must instruct on all lesser included offenses supported by substantial evidence. [Citations.] The duty applies whenever there is evidence in the record from which a reasonable jury could conclude the defendant is guilty of the lesser, but not the

12

greater, offense. [Citations.] That voluntary manslaughter is a lesser included offense of murder is undisputed. [Citations.] [¶] Imperfect self-defense, which reduces murder to voluntary manslaughter, arises when a defendant acts in the *actual* but unreasonable belief that he is in imminent danger of death or great bodily injury. [Citations.]" (*People v. Duff* (2014) 58 Cal.4th 527, 561-562, italics added.) Substantial evidence requiring instruction on the lesser included offense of voluntary manslaughter is "'"'"evidence from which a jury composed of reasonable [persons] could . . . conclude[]'"' that the lesser offense, but not the greater, was committed. [Citations.]' [Citation.]" (*People v. Moye* (2009) 47 Cal.4th 537, 553.)

The duty to instruct on lesser included offenses "'exists even when as a matter of trial tactics a defendant not only fails to request the instruction but expressly objects to it being given. [Citations.] Just as the People have no legitimate interest in obtaining a conviction of a greater offense than that established by the evidence, a defendant has no right to an acquittal when that evidence is sufficient to establish a lesser included offense.' [Citation.]" (*People v. Barton*, *supra*, 12 Cal.4th at p. 195; accord, *People v. Breverman* (1998) 19 Cal.4th 142, 154-155.)

3. *Analysis*

Under *Barton*, the fact that defense counsel declined an instruction on self-defense does not relieve the trial court of its duty to instruct the jury on voluntary manslaughter based on unreasonable self-defense if there is substantial evidence to support such an instruction. As discussed, however, there is no substantial evidence Guerra actually believed his life was in danger from Pineda, which is necessary to support an instruction on voluntary manslaughter based on unreasonable self-defense.

Guerra cites his statement to the court in a letter written after the verdict that "[e]verything was [an] unfortunate accident trying to defend myself." This is not evidence introduced at trial which we can consider in making our determination as to whether an instruction on voluntary manslaughter based on unreasonable self-defense was required.

13

Guerra's testimony was that the gun went off accidentally during a struggle while Pineda "was trying to take it away from [Guerra]." As noted in *People v. Curtis* (1994) 30 Cal.App.4th 1337, 1358, generally "self-defense and accidental homicide are mutually exclusive, a defendant who claims to have killed by accident while defending himself or herself is not thereby entitled to jury instructions on self-defense." (Accord, *People v. Villanueva* (2008) 169 Cal.App.4th 41, 51 ["an accidental shooting is *inconsistent* with an assertion of self-defense"].)

In *People v. Villanueva*, *supra*, 169 Cal.App.4th 41, however, the court stated "that a defendant's assertion of accident *may be* disregarded by the jury in an appropriate case, and will not foreclose jury instruction on self-defense when there [1] exists substantial evidence that the shooting was intentional (and [2] met the other requirements of self-defense). [Citations.]" (*Id*. at pp. 51-52.) Here, however, there was no substantial evidence that the shooting was intentional "*and met the other requirements of self-defense*." (*Id*. at p. 51, italics added.) There was evidence that the shooting was intentional from Flores, and the jury could have disbelieved Guerra's testimony that the gun fired accidentally, but there was no evidence that Guerra "'*actually,* but unreasonably, believed he was in imminent danger of death or great bodily injury'" when he intentionally shot Pineda.[5] (*People v. Manriquez* (2005) 37 Cal.4th 547, 582; see also *People v. Battle* (2011) 198 Cal.App.4th 50, 72-73.)

*People v. Elize*, *supra*, 71 Cal.App.4th 605 is instructive. In *Elize*, the defendant, a security guard, was involved in an altercation with two women, one of whom may have hit him with an object. The defendant's gun fired, and a bullet went through one

_____

[5]     Guerra argues *Villanueva* "posed a relatively similar factual scenario to this case." While there are similarities, we disagree *Villanueva* requires the instruction in this case. In *Villanueva*, there was evidence the victim threatened to kill the defendant at their next encounter. The defendant testified that he was "terrified" of the victim upon subsequently encountering him later that day. Finally, after appearing to retreat from the encounter by shifting his van into reverse, there was evidence the victim stopped and then shifted his van into gear to drive forward toward the defendant as if he were going to run over the defendant. (*People v. Villanueva, supra,* 169 Cal.App.4th at pp. 46-47.)

14

woman's clothing, although it did not injure her. The defendant testified the two women attacked him with pipes. One of the women grabbed his gun from his holster, and he attempted to point the gun upward. The gun fired, and the women fled. (*Id*. at pp. 607-608.) The defense counsel requested an instruction on self-defense. Acknowledging the defendant did not testify he acted in self defense, counsel argued based on the evidence the defendant was hit and suffered a broken arm, the jury could find that the defendant acted in self-defense. The trial court denied the request based on the defendant's testimony the gun fired accidentally. (*Id*. at p. 610.)

After noting the "'instructional distinction between *defenses* and lesser included *offenses*,'" the court observed that "[d]efense counsel in *Barton* specifically requested that no instructions be given on heat of passion manslaughter. The trial court nevertheless instructed on heat of passion manslaughter, because substantial evidence supported that lesser included offense. The Supreme Court in *Barton* affirmed, stating that '"[t]he trial court must instruct on lesser included offenses . . . [supported by the evidence] . . . , regardless of the theories of the case proferred by the parties."' [Citation.] This conclusion was based on the underlying principle that '. . . the jury must be allowed to "consider the *full range* of possible verdicts—not limited by the strategy, ignorance, or mistakes of the parties," so as to "*ensure* that the verdict is no harsher or more lenient than the evidence merits."' [Citation.]" (*People v. Elize*, *supra*, 71 Cal.App.4th at p. 612.)

Applying these principles to the case before it, the *Elize* court found it "clear that had the shot in question hit and killed one of the women, and had [the] defendant been charged with murder, the trial court would not only have had a duty, but indeed a sua sponte duty, to instruct on both heat of passion and unreasonable self-defense manslaughter notwithstanding defendant's claim that the gun fired accidentally. The fact that defendant testified that the shot was accidental would not have precluded a sua sponte duty to instruct on the lesser included offenses, as *Barton* makes clear. It is clear that inconsistency between an instruction and a defendant's testimony is no reason to refuse an instruction, so long as substantial evidence supports the instruction, at least in

15

the case of lesser included offenses." (*People v. Elize*, *supra*, 71 Cal.App.4th at p. 612.) Rather, "a lesser included instruction is required even though the factual premise underlying the instruction is contrary to the defendant's own testimony, so long as there is substantial evidence in the entire record to support that premise." (*Id*. at p. 615.)

The court further stated that "[a]s to defenses, such as self-defense, the court must instruct sua sponte only if there is substantial evidence of the defense and the defense is not 'inconsistent with [the] defendant's theory of the case.' [Citation.]" (*People v. Elize*, *supra*, 71 Cal.App.4th at p. 615.) In the case before it, the court concluded "a jury could find from the evidence presented that [the] defendant was sought out and attacked by two angry women much larger than he, that he was being beaten with pipes, that this beating accounted for his broken wrist, that one of the women tried to take his handgun, and that he struggled with that woman while the other continued to beat him. A jury could disbelieve [the] defendant's testimony that the gun fired accidentally during this struggle. A jury could find that [the] defendant fired the gun intentionally, hoping to end the attack upon him either by hitting one of his assailants or by firing into the air to scare off his attackers." (*Id*. at pp. 615-616.) Because there was substantial evidence to support the defense and the defendant requested an instruction on self-defense, the court concluded that the jury should have been instructed on the defense. (*Id*. at p. 616.)

Here, in the absence of any substantial evidence that Guerra was acting in imminent danger of death or great bodily injury, and in view of counsel's statement that he did not want the jury instructed on self-defense, the trial court properly did not instruct on imperfect self-defense under *Elize*. Under *Elize* and *Barton*, the trial court had a duty to instruct the jury on the lesser included offense of voluntary manslaughter based on imperfect self-defense only if there was substantial evidence that Guerra "'*actually,* but unreasonably, believed he was in imminent danger of death or great bodily injury'" when he intentionally shot Pineda. (*People v. Manriquez*, *supra*, 37 Cal.4th at p. 582; *People v. Battle*, *supra*, 198 Cal.App.4th at pp. 72-73.) Unlike *Elize*, here there was no evidence Pineda attacked or threatened Guerra from which the jury could conclude Guerra believed it was necessary to shoot Pineda to protect himself. Accordingly, instruction on

16

voluntary manslaughter based on unreasonable self-defense was not required. (*Manriquez*, *supra*, at p. 582; *Battle*, *supra*, at p. 74.)

In support of his claim that the trial court also had a sua sponte duty to instruct the jury on voluntary manslaughter based on the use of unreasonable force in resisting a felony, Guerra states that "[t]he consensus in a number of states is that an unnecessary killing in an attempt to prevent the commission of a felony is manslaughter and not murder." As he points out, however, this principle is rooted in those states' manslaughter statutes. (See, e.g., *Stiles v. State* (Okla. Crim. App. 1992) 829 P.2d 984, 991; *State v. Seifert* (Wis. 1990) 454 N.W.2d 346, 349-350.) California's voluntary manslaughter statute contains no such provision. (See Pen. Code, § 192.)

Guerra states that the Wisconsin case, *Seifert*, was cited with approval in *People v. Mejia-Lenares* (2006) 135 Cal.App.4th 1437. However, *Mejia-Lenares* did not hold that in California voluntary manslaughter may be committed by the use of unreasonable force in resisting a felony. Rather, it relied on *Seifert* for the principle "that imperfect self-defense was 'never intended to cover situations . . . where it is entirely the defendant's mental disease or defect, not an error in judgment or perception or a negligently-formed perspective of the situation, that motivates the defendant's actions.' [Citation.]" (*Id.* at p. 1460.) This principle has no application here, and California law does not support Guerra's argument.

## C. *Failure To Instruct Regarding that the Firearm Enhancement Did Not Apply if the Victim Was an Accomplice*

### 1. *Background*

Guerra received a sentence enhancement of 25 years to life under Penal Code section 12022.53, subdivision (d), for personally and intentionally discharging a firearm in the commission of the crime, causing great bodily injury and death. That subdivision provides a sentence enhancement for "any person who, in the commission of a [specified] felony . . . , personally and intentionally discharges a firearm and proximately causes great bodily injury, as defined in Section 12022.7, or death, to any person *other than an*

*accomplice . . . .*" (*Ibid.*, italics added.) The enhancement does not apply where the victim was an accomplice to the intended crime, "the natural and probable consequence of which was the intentional discharge of a firearm resulting in his own death." (*People v. Flores* (2005) 129 Cal.App.4th 174, 182.)

The trial court instructed the jury on the enhancement pursuant to CALCRIM No. 3150 but omitted any language regarding the fact that the enhancement did not apply if the victim was an accomplice. Guerra contends this was error, in that there was substantial evidence Pineda was an accomplice to the crimes of brandishing or discharging a firearm from a motor vehicle, and his death was a natural and probable consequence of these crimes.

### 2. *Applicable Law*

The trial court has the duty to instruct the jury "'on the general principles of law relevant to the issues raised by the evidence.'" (*People v. Smith* (2013) 57 Cal.4th 232, 239.) The court "'has the correlative duty "to refrain from instructing on principles of law which not only are irrelevant to the issues raised by the evidence but also have the effect of confusing the jury or relieving it from making findings on relevant issues."'" (*People v. Alexander* (2010) 49 Cal.4th 846, 920.)

An accomplice is a person "who is liable to prosecution for the identical offense charged against the defendant . . . ." (Pen. Code, § 1111.) One "'is liable to prosecution for the identical offense'" if he fits the definition of a principal provided in Penal Code section 31. (*People v. Lewis* (2001) 26 Cal.4th 334, 368-369; *People v. Horton* (1995) 11 Cal.4th 1068, 1113-1114.) That is, if he directly commits an act constituting an offense, aids and abets commission of the offense or, although not present, advises and encourages its commission, he fits the definition of a principal. (Pen. Code, § 31.)

A person may be held liable as an aider and abettor when, with knowledge of the perpetrator's criminal purpose, he gives the perpetrator aid or encouragement with the intent of facilitating the perpetrator's commission of the crime. (*People v. Mendoza* (1998) 18 Cal.4th 1114, 1123; *People v. Miranda* (2011) 192 Cal.App.4th 398, 407.)

18

Mere presence at the scene and knowledge that the crimes are being committed is insufficient to impose liability for aiding and abetting. (*People v. Swanson-Birabent* (2003) 114 Cal.App.4th 733, 744; see also *Miranda*, *supra*, at p. 407.)

       3. *Analysis*

      Guerra argues that there is substantial evidence "that Pineda instigated, encouraged and perhaps even facilitated the crimes of brandishing and discharge of a firearm from a motor vehicle." Specifically, there was evidence that Pineda, Guerra and Flores "were all engaged in a pattern of criminal conduct which included purchasing and ingesting a controlled substance (cocaine) . . . , assault (grabbing each other by the neck and head-butting) . . . , and discharge of a firearm from a motor vehicle . . . [.] Pineda instigated the crime of 'carrying a loaded firearm on the person or in a vehicle while . . . on any public street . . .' in violation of [Penal Code] section 25850 when he took the gun out of the vehicle glove compartment. . . . Pineda's criminal conduct instigated and encouraged any brandishing allegedly committed by [Guerra]."

      We disagree with Guerra's characterization of the evidence. More importantly, the evidence Guerra cites does not provide substantial evidence that Pineda aided and abetted Guerra's crimes of brandishing and discharging a firearm from a motor vehicle. If Flores' testimony is believed, Guerra, Pineda, and Flores used cocaine together, and Guerra and Pineda were fighting with one another, but at the time they got into the SUV to go to the liquor store, neither Flores nor Pineda knew that Guerra had a handgun in the vehicle. They did not know about the handgun until Guerra took it out and fired into the air while on the freeway. At that point, Pineda did not encourage Guerra to keep firing or brandishing the gun; he kept asking for the gun so he could fire it. Moreover, Pineda was not killed while Guerra was brandishing or discharging the gun from the SUV.

      If Guerra's testimony is believed, Guerra was already guilty of carrying the handgun in a vehicle on a public street when Pineda discovered the gun in the glove compartment. Guerra testified that he did not fire the gun from the SUV as they were driving to the duplex; he put it under his leg to keep it away from Pineda. Once they

arrived at the duplex, there was a struggle over the gun and Pineda was killed. Again, there was no substantial evidence that Pineda aided and abetted Guerra in any criminal conduct, the natural and probable consequences of which were that someone would be shot.

In his reply brief, Guerra notes that the jury was instructed on involuntary manslaughter based on Guerra's commission of the crime of brandishing a firearm and acting with criminal negligence, meaning that he acted in a reckless way that created a high risk of death or great bodily injury. (CALCRIM No. 580.) He claims that "[t]he act of brandishing referred to in the court's instruction . . . was the brandishing that occurred in [the] van immediately before the homicide, and not the brandishing and discharge of a firearm that allegedly occurred on the freeway."

Brandishing a firearm is drawing or exhibiting a firearm "in a rude, angry, or threatening manner" or " unlawfully us[ing a] . . . firearm in any fight or quarrel." (Pen. Code, § 417, subd. (b).) Guerra does not explain how Pineda aided and abetted Guerra's brandishing a firearm in the SUV in the driveway, given the evidence that if Guerra brandished the weapon, it was in threatening Pineda. Rather Guerra argues that "Pineda's death was a natural and probable consequence of [Pineda's] attempt to discharge the firearm from a motor vehicle. Were it not for his demands to discharge the firearm and his struggle with [Guerra] to obtain the firearm, he would not have been killed." That Pineda fought with Guerra over the gun in an attempt to shoot it himself is not evidence that he aided or encouraged Guerra's brandishing a firearm in the SUV with the intent of facilitating Guerra's commission of that crime. (*People v. Mendoza*, *supra*, 18 Cal.4th at p. 1123; *People v. Miranda*, *supra*, 192 Cal.App.4th at p. 407.)

There was no evidence Pineda was an accomplice in Guerra's brandishing or discharging a firearm from a motor vehicle. Therefore, the trial court was not required to instruct the jury that the Penal Code section 12022.53, subdivision (d), firearm enhancement did not apply where the victim was an accomplice. (*People v. Alexander*, *supra*, 49 Cal.4th at pp. 920-921.)

20

**D.** *Other Issues*

The People argue that Guerra's claims of instructional error are forfeited on appeal by his counsel's failure to request such instructions. (*People v. Virgil* (2011) 51 Cal.4th 1210, 1260.) As Guerra points out, we may review any claim of instructional error that affects a defendant's substantial rights, whether or not there was an objection to the instruction at trial. (Pen. Code, § 1259; *People v. Lopez* (2011) 199 Cal.App.4th 1297, 1304, fn. 35; see also *People v. Trujillo* (2015) 60 Cal.4th 850, 856 & fn. 4.) Because we conclude there was no instructional error, we need not address the forfeiture argument. (*People v. Johnson* (2015) 60 Cal.4th 966, 993.)

Guerra contends the cumulative effect of the foregoing errors requires reversal of his conviction. Inasmuch as we have found no error, Guerra's claim of cumulative error fails. (*People v. Burgener* (2003) 29 Cal.4th 833, 867; *People v. Phillips* (2000) 22 Cal.4th 226, 244.)

Guerra further contends that he was deprived of the effective assistance of counsel by his trial counsel's failure "to request instructions explaining that [Guerra] was engaged in a lawful activity when he resisted Pineda's efforts to rob [Guerra] of his firearm in order to discharge it from a motor vehicle," and "the lesser included offense of voluntary manslaughter based upon a theory of unnecessary use of deadly force in resisting a felony."

"'To establish ineffective assistance of counsel under either the federal or state guarantee, a defendant must show that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms, and that counsel's deficient performance was prejudicial, i.e., that a reasonable probability exists that, but for counsel's failings, the result would have been more favorable to the defendant. [Citations.]' [Citation.]" (*In re Roberts* (2003) 29 Cal.4th 726, 744-745.) Because Guerra was not entitled to the instructions at issue, his counsel's failure to request them did not fall below an objective standard of reasonableness and did not constitute ineffective assistance of counsel. (*People v. Ledesma* (2006) 39 Cal.4th 641, 748.)

It appears that to a certain extent, Guerra's claims of instructional error and ineffective assistance of counsel arise from his trial counsel's decision not to rely on the defense of imperfect self-defense or to present any evidence on self-defense. There is nothing in the record to show counsel's reason for this decision.

"[W]here the record on direct appeal 'does not show the reason for counsel's challenged actions or omissions, the conviction must be affirmed unless there could be no satisfactory explanation.' [Citation.] Under such circumstances, a claim of ineffective assistance is generally rejected on direct appeal and more properly raised in a petition for habeas corpus, which can include declarations and other information outside the appellate record that reveal the reasons for the challenged conduct. [Citation.]" (*People v. Witcraft* (2011) 201 Cal.App.4th 659, 664-665; see *People v. Gray* (2005) 37 Cal.4th 168, 211.) Because there could be a satisfactory explanation for counsel's decision, such as the absence of any evidence that Guerra acted in self-defense, any challenge to counsel's decision and the results of that decision would have to be made via a petition for writ of habeas corpus.

Finally, Guerra asserts, and the People agree, that the abstract of judgment must be corrected to delete the sex offender registration requirement (Pen. Code, § 290, subd. (c)). Since Guerra was not convicted of one of the enumerated sex offenses and the trial court did not order that he register as a sex offender, the abstract of judgment must be corrected to delete the registration requirement. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.)

## DISPOSITION

The judgment is affirmed. The trial court is directed to correct the abstract of judgment to delete the sex offender registration requirement and to forward a copy of the corrected abstract of judgment to the Department of Corrections and Rehabilitation.


BECKLOFF, J.[*]


We concur:


PERLUSS, P. J.


ZELON, J.

---

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.