Filed 7/18/22 P. v. Visage CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Colusa)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>THOMAS DANIEL VISAGE,<br><br>    Defendant and Appellant. | C091283<br><br>(Super. Ct. No. CR604091) |

A jury found defendant Thomas Daniel Visage guilty of conspiracy to commit check fraud. The trial court suspended imposition of sentence and placed defendant on formal probation for three years with various terms and conditions, including certain probation fees. Defendant appeals, arguing: (1) the evidence was insufficient to support the conviction for conspiracy; (2) the trial court should have instructed the jury sua sponte on a mistake of fact defense, or in the alternative, his trial counsel was ineffective for failing to request such an instruction (CALCRIM No. 3406); (3) the trial court should have instructed the jury with CALCRIM No. 225 rather than CALCRIM No. 224; (4)

1

Assembly Bill No. 1950 (2019-2020 Reg. Sess.) (Stats. 2020, ch. 328, § 2; Assembly Bill 1950) requires reduction of his probationary term to two years; (5) Assembly Bill No. 1869 (2019-2020 Reg. Sess.) (Stats. 2020, ch. 92, § 47; Assembly Bill 1869) requires that we strike all probation fees; (6) Assembly Bill No. 177 (2021-2022 Reg. Sess) (Stats. 2021, ch. 257, § 19; Assembly Bill 177), which became effective on January 1, 2022, requires that we strike administrative and transfer fees imposed pursuant to former Penal Code sections 1202.4, subdivision (l) and 1203.9, respectively[1]; and (7) clerical errors appear in one of the trial court's minute orders and the order of probation. We reject defendant's challenge to the sufficiency of the evidence and claims of instructional error. We also reject his claim of ineffective assistance of counsel. We agree, however, that defendant is entitled to relief under Assembly Bills 1950, 1869, and 177, and the minute order and order of probation should be corrected. Accordingly, we will remand with instructions to modify the term of probation in accordance with section 1203.1, subdivision (a), as amended by Assembly Bill 1950, vacate any fees imposed under former section 1203.1b that remain unpaid as of July 1, 2021, vacate the administrative and transfer fees imposed under former sections 1202.4, subdivision (l) and 1203.9, respectively, and correct the minute order and order of probation. In all other respects, we will affirm.

## I. BACKGROUND

### A.     A Trip to the ATM

Colusa Police Department officers were advised to be on the lookout for a black Toyota Prius on the evening of September 29, 2018. Officer Mikah Hogan spotted the Prius at a Shop and Save store; a man named George was driving, and defendant was seated in the passenger seat. Officer David Jackson happened upon the Prius around the

---

[1] Undesignated statutory references are to the Penal Code.

same time, near the Tri Counties Bank. George was still seated in the driver's seat, and defendant was walking from the ATM to the car.

Officer Jackson contacted the men and searched the car. He found check stubs and photocopies of checks from the Tri Counties Bank account of T.T. General Building Contractor. He also found a voided check from the Tri Counties Bank account of K.T. and S.T., and a California driver's license belonging to K.T., which had been altered by replacing the photograph of K.T. with George's photograph.

Officer Jackson took defendant's statement. Defendant said he had known George for a month or so. George had given him a couple of checks to deposit; one in George's name and the rest in defendant's name. Defendant had deposited one such check at the ATM that night and withdrawn $200, which he intended to give to George. Defendant explained that he had deposited the checks as a favor to George, as George did not have a bank account. Defendant added that he and George were on their way to a casino. Officer Jackson seized $200 from defendant's pocket.

B.    *Charges and Jury Trial*

Defendant was charged by first amended information with a single count of conspiracy to commit check fraud. (§§ 182, subd. (a)(1), 476, subd. (a).) The matter was tried to a jury in August and September 2019. The prosecution's witnesses testified substantially as described *ante*. The prosecution also presented testimony from K.T., whose name appears on the voided check and driver's license found in the car. K.T. testified that he handled business operations for T.T. General Building Contractor and kept checks for the business in his home office. K.T. explained that George was his wife's ex-father-in-law, and an occasional guest in their home. George was not employed by T.T. General Building Contractor, was not authorized to write checks for the business, and had no reason to possess checks or check stubs from it. K.T. testified that he did not know defendant and had never written a check to him.

3

K.T. estimated that 100 checks had been stolen from his house and all appeared to have been issued to acquaintances of George. Bank records showed that eight checks had been made out to defendant over the course of two and a half weeks, and all had been endorsed and deposited into defendant's account at Tri Counties Bank. The deposits ranged from $300 to $524 and were followed by cash withdrawals, usually in the maximum amount of $200. K.T. also testified that he had purchased a phone for George, which George had used for a time and then returned. K.T. turned the phone over to law enforcement.

An investigator for the Colusa County District Attorney's Office testified that he searched the phone and found text exchanges between defendant and George. One such exchange, dated September 24, 2018, began with defendant writing to George, "Wishing I had some." George responded, "Yeah soon as that check clears I'm going to go get some I'll bring you some." The next night, defendant asked George, "We going to go early tomorrow to get our check[]s?" George replied, "Yeah I'll pick you up at 5:30." On September 29, 2018, George wrote to defendant, "yeah I wanted to see if you would do a check for me." Defendant responded in the affirmative and instructed George to meet him at the Shop and Save, where Officer Hogan would spot them a short time later.

Defendant testified in his own defense. He explained that he had been separated from his wife, L.V., in September 2018. George's girlfriend, M.S., was staying with L.V. in defendant's home. According to defendant, L.V. came into possession of his ATM card, and used the card to deposit one or two checks provided by George into defendant's account. Defendant said he only learned about these deposits—which he described as the first in a series—after they had been made. Defendant acknowledged depositing other checks provided by George into his own account. Defendant also acknowledged that the checks were all made out to him.

Defendant recalled that he was working as a rice drier in Williams in September 2018 and arranged for a job for George with the same company. However, defendant

4

understood that George was also doing some sort of work for his stepdaughter. Defendant additionally understood that George received checks from his stepdaughter but was unable to deposit them because he did not have any identification. With respect to the text message in which he asked George whether they would be going "early tomorrow to get [their] checks," defendant said he was referring to paychecks from their common employer. With respect to the text message in which George asked whether defendant would "do a check for me," defendant said he understood George to mean that he wanted defendant to deposit a check because he did not have any identification. Defendant denied knowing that any of the checks were stolen at the time he deposited them.

On cross examination, defendant admitted to depositing seven checks provided by George and written on the account of T.T. General Building Contractor in September 2018. Defendant acknowledged that he had never earned any money from T.T. General Building Contractor and had no business with the company that would result in the receipt of checks. Defendant also acknowledged that he had only known George for a month or so at the time of the first deposit and was aware that George had no permanent address and had been living in his car. Defendant also acknowledged that he generally deposited checks for George at night and would sometimes visit a casino with him afterwards.

L.V. also testified for the defense. L.V. testified that she knew George through her friend, M.S. L.V. explained that George asked her to deposit one or two checks into defendant's account. L.V. said she deposited a check into defendant's account, without his knowledge, and withdrew $200, which she gave to George. L.V. testified that she understood George was unable to deposit the check himself because he did not have a bank account or identification. L.V. acknowledged on cross-examination that she hesitated to deposit the first check because she did not really know George. However, she spoke with M.S. and satisfied herself that there would not be any problem. L.V. also

5

acknowledged that George was living in his car around this time and gave her cash from one of the checks to pay a PG&E bill.

## C. *Verdict and Sentence*

The jury found defendant guilty as charged after deliberating for less than an hour. Defendant appeared for sentencing on November 6, 2019. The trial court suspended imposition of sentence and placed defendant on formal probation for three years with various terms and conditions, including that defendant serve 60 days in county jail and pay certain fines and fees. This appeal timely followed.

## II. DISCUSSION

## A. *Sufficiency of the Evidence*

Defendant challenges the sufficiency of the evidence supporting the conviction for conspiracy. He argues there was insufficient evidence to support the finding that he agreed, intended to agree, or intended to commit the underlying offense of check fraud. We disagree.

" 'When reviewing a challenge to the sufficiency of the evidence, we ask " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " [Citation.] Because the sufficiency of the evidence is ultimately a legal question, we must examine the record independently for " 'substantial evidence— that is, evidence which is reasonable, credible, and of solid value' " that would support a finding beyond a reasonable doubt.' [Citation.] In doing so, we 'view the evidence in the light most favorable to the jury verdict and presume the existence of every fact that the jury could reasonably have deduced from the evidence.' [Citation.] 'We must also "accept logical inferences that the jury might have drawn from the circumstantial evidence." ' [Citation.] We do not question the credibility of a witness's testimony, so long as it is 'not inherently improbable,' nor do we reconsider the weight to be given any particular item of evidence." (*People v. Navarro* (2021) 12 Cal.5th 285, 302.)

" ' " 'Conspiracy requires two or more persons agreeing to commit a crime, along with the commission of an overt act, by at least one these parties, in furtherance of the conspiracy.' " ' [Citation.] ' "Evidence is sufficient to prove a conspiracy to commit a crime 'if it supports an inference that the parties positively or tacitly came to a mutual understanding to commit a crime.' " ' [Citation.] 'Evidence of an agreement does not require proof that the parties met and expressly agreed; a criminal conspiracy can be shown through circumstantial evidence.' [Citation.] 'If the agreement between the conspirators is the crux of criminal conspiracy, then the existence and nature of the relationship among the conspirators is undoubtedly relevant to whether such agreement was formed, particularly since such agreement must often be proved circumstantially. " 'The existence of a conspiracy may be inferred from the conduct, relationship, interests, and activities of the alleged conspirators before and during the alleged conspiracy.' " ' " (*People v. Navarro, supra,* 12 Cal.5th at pp. 302-303)

Substantial evidence supports the jury's finding that defendant agreed to commit check fraud. The evidence showed that defendant received multiple checks from George, a person he had known only briefly, who purported to lack any form of identification and appeared to be homeless. These circumstances were enough to raise a red flag for L.V., who nevertheless agreed to deposit one or two checks for George. But defendant went much further, depositing seven such checks in less than three weeks. (See *People v. Rosborough* (1960) 178 Cal.App.2d 156, 163 [possession of a forged instrument plus slight corroborative evidence of other inculpatory circumstances will suffice to show knowledge of the spurious instrument].) The checks, which were made out to defendant and endorsed by him, were written on the account of T.T. General Building Contractor, a company defendant had never worked for and with which he had no dealings. The jury could reasonably infer the existence of an agreement to commit check fraud from the number of checks, the questionable circumstances surrounding George's possession of them, and the frequency with which defendant made the deposits and withdrawals. (Cf.

7

*People v. Pitts* (1990) 223 Cal.App.3d 606, 891-892, superseded by statute on other grounds as stated in *People v. Levesque* (1995) 35 Cal.App.4th 530, 537 [conspiratorial agreement to commit lewd and lascivious acts on children could be inferred from "the number of times this went on and the nature of the acts that occurred"].)

The jury could also infer the existence of an agreement to commit check fraud from the text messages, which together showed that defendant and George engaged in regular communications regarding checks, including when they might be deposited, and what might be done with money withdrawn against such deposits (e.g., getting "some").[2] From their frequency and familiar tone, the jury could reasonably infer that the messages were part of an ongoing conversation about check fraud, which would logically include an agreement, whether express or implied, to commit that crime. (See *People v. Maciel* (2013) 57 Cal.4th 482, 515-516 [" 'Evidence is sufficient to prove a conspiracy to commit a crime "if it supports an inference that the parties positively or tacitly came to a mutual understanding to commit a crime" ' "].) Substantial evidence supports the conviction.

B.    *Mistake of Fact Instruction*

Defendant argues the trial court erred in failing to instruct the jury on the mistake of fact defense. He argues substantial evidence supported a mistake of fact defense, and thus, the trial court had a sua sponte duty to give CALCRIM No. 3406, which states the defendant is not guilty of the charged offense if he "did not have the specific intent or mental state required" to commit the crime because he "did not know a fact" or "mistakenly believed a fact."[3] Defendant additionally argues his trial counsel was ineffective for failing to request CALCRIM No. 3406. Neither contention has merit.

---

[2] Defendant testified that the "some," in his message referred to beer.

[3] CALCRIM No. 3406 provides in full: "The defendant is not guilty of _____ <insert crime[s]> if (he/she) did not have the intent or mental state required to commit the

8

*1.        The Trial Court's Duty*

The trial court has a sua sponte duty to instruct on the " ' "general principles of law relevant to the issues raised by the evidence." ' " (*People v. Breverman* (1998) 19 Cal.4th 142, 154.)  This includes a sua sponte obligation to instruct on a specific defense, " ' "if it appears that the defendant is relying on such a defense, or if there is substantial evidence supportive of such defense and the defense is not inconsistent with the defendant's theory of the case." ' " (*People v. Maury* (2003) 30 Cal.4th 342, 424.)  Substantial evidence means evidence of a defense which, if believed, would be sufficient for the jury to find a reasonable doubt as to the defendant's guilt.  (*People v. Salas* (2006) 37 Cal.4th 967, 982.)  However, the trial court's sua sponte duty does not extend to giving instructions on a defendant's attempt to negate or rebut the prosecution's proof of an element of the offense, i.e., pinpoint instructions.  (*People v. Anderson* (2011) 51 Cal.4th 989, 996-997 (*Anderson*).)  Pinpoint instructions are required to be given only upon request.  (*Id.* at p. 997.)  We review claims of instructional error de novo.  (*People v. Mitchell* (2019) 7 Cal.5th 561, 579.)

Mistake of fact is a common law and statutory defense to a criminal charge. (*People v. Lucero* (1988) 203 Cal.App.3d 1011, 1016; § 26.)  "Penal Code section 26 lists classes of persons deemed incapable of committing crimes, including '[p]ersons who committed the act . . . charged under an ignorance or mistake of fact, which disproves any criminal intent.' " (*People v. Givan* (2015) 233 Cal.App.4th 335, 343.)  "A 'mistake of

_____

crime because (he/she) [reasonably] did not know a fact or [reasonably and] mistakenly believed a fact.  [¶]  If the defendant's conduct would have been lawful under the facts as (he/she) [reasonably] believed them to be, (he/she) did not commit _____ <insert crime[s]>.  [¶]  If you find that the defendant believed that _____ <insert alleged mistaken facts> [and if you find that belief was reasonable], (he/she) did not have the specific intent or mental state required for _____ <insert crime[s]>.  [¶]  If you have a reasonable doubt about whether the defendant had the specific intent or mental state required for _____ <insert crime[s]>, you must find (him/her) not guilty of (that crime/those crimes)."

fact' defense negates an element of a charged crime because it disproves criminal intent. [Citations.] However, a mistake of fact jury instruction is not appropriate where the defendant's mistaken belief does not negate an element of the crime." (*Id.* at p. 345.) Thus, the mistake of fact defense "applies only in limited circumstances, specifically when the defendant holds a mistaken belief in a fact or set of circumstances which, if existent or true, would render the defendant's otherwise criminal conduct lawful." (*People v. Lawson* (2013) 215 Cal.App.4th 108, 111.) Specific intent crimes, such as conspiracy (*People v. Johnson* (2013) 57 Cal.4th 250, 257), require only an actual mistaken belief, not a reasonable one. (*People v. Lawson, supra,* at p. 115.)

We are not convinced that substantial evidence supported giving a mistake of fact instruction here. Contrary to defendant's suggestion, there was very little evidence—indeed, next to none—that defendant actually but mistakenly believed the checks were genuine.[4] Neither defendant nor L.V. so testified. Rather, defendant testified he did not know the checks were stolen. But that testimony does not negate any element of the conspiracy charge.[5] That defendant may not have known the checks were stolen does not

---

[4] Defendant asserts that he testified "that he did not know the checks were stolen or false." This is only partly true. Defendant testified he did not know the checks were stolen; he did not testify he did not know the checks were false.

[5] The jury was instructed on conspiracy with CALCRIM No. 415, which provides that the prosecution was required to prove that: (1) defendant "intended to agree and did agree" with George to commit check fraud; (2) at the time of the agreement, the defendant and George intended that one or more of them would commit check fraud; (3) defendant or George committed at least one overt act in furtherance of the conspiracy, namely, obtaining stolen personal checks belonging to victim, writing defendant's name on the check, and attempting to cash the check at an ATM; and (4) the overt act was committed in California.

The jury was instructed on check fraud with CALCRIM No. 1935, which provides that the prosecution was required to prove that: (1) defendant or a co-conspirator possessed a false check; (2) defendant knew the document was false; (3) when defendant or a co-conspirator possessed the document, defendant intended to defraud; and (4) when

10

mean he actually but mistakenly believed they were genuine.  Defendant could have been unaware of the circumstances by which George came to possess the checks, but still known that the checks were false.  Defendant's testimony thus fails to show that he actually but mistakenly believed in a set of circumstances—that the checks were genuine—which, if true, would have shown that he did not agree or intend to agree or intend to commit check fraud.

The only evidence that might have supported a mistake of fact instruction was defendant's post-arrest statement to Officer Jackson, which was recorded and played for the jury.  During the statement, defendant was asked whether he had any "idea that any checks were stolen, that [he wasn't] supposed to cash them, anything like that?"  Defendant responded, "No.  Absolutely not."  We question whether a blanket denial of wrongdoing constitutes substantial evidence defendant actually but mistakenly believed in a set of circumstances which, if true, would have shown he did not agree, or intend to agree, or intend to commit check fraud. (*People v. Wilson* (2005) 36 Cal.4th 309, 331 [" 'Substantial evidence is "evidence sufficient 'to deserve consideration by the jury,' not 'whenever *any* evidence is presented, no matter how weak' " ' "].)  The paucity of evidence that defendant actually but mistakenly believed the checks were genuine will become more important to our analysis of defendant's ineffective assistance of counsel claim.  For the time being, we need only observe that trial courts do not have a sua sponte duty to instruct on mistake of fact, even where substantial evidence supports the defense, provided that the jury has been properly instructed on the mental state element of the charged crime.  (Cf. *Anderson, supra,* 51 Cal.4th at pp. 996-997 [trial court does not have a sua sponte duty to instruct on the defense of accident so long as jury has been properly instructed on mental state element]; and see *People v. Lawson, supra,* 215 Cal.App.4th at

---

defendant or a co-conspirator possessed the document, they intended to pass or use the document as genuine.

p. 117 [holding that *Anderson's* rationale "applies with equal force to the defense of mistake of fact, or any other defense that operates only to negate the mental state element of the crime"].)

The jury here was instructed with CALCRIM No. 415, which specified that, in order to convict defendant of conspiracy, jurors had to find he "intended to agree and did agree" with George to commit check fraud, and "intended that one or more of them would commit" that crime. (CALCRIM No. 415.) The jury was also instructed with CALCRIM No. 1935, which specified that, in order to convict defendant of conspiracy to commit check fraud, jurors had to find defendant or George possessed a false check, and "defendant knew that the document was false," "intended to defraud," and "intended to pass or use the document as genuine." (CALCRIM No. 1935.)

Defendant does not take issue with either of these instructions, which together instructed jurors that, in order to convict defendant of conspiracy to commit check fraud, they had to conclude he *intended* to commit that crime. Because the jury was properly instructed on the mental state element of the charged crime, the trial court was not required to instruct the jury on mistake of fact sua sponte. (*People v. Covarrubias* (2016) 1 Cal.5th 838, 874, fn. 14 ["the trial court's sua sponte instructional duties do not extend to defenses that serve only to negate an element of the crime"].)

### 2. *Ineffective Assistance of Counsel*

In a supplemental brief, defendant argues his trial counsel's failure to request a mistake of fact instruction constitutes ineffective assistance of counsel. We disagree.

To prevail on a claim of ineffective assistance of counsel, a defendant must establish (1) that counsel's performance fell below an objective standard of reasonable competence, and (2) that he was thereby prejudiced. (*Strickland v. Washington* (1984) 466 U.S. 668, 687.) Here, as we have shown, the evidence was insufficient to support an instruction on the mistake of fact defense, because there was no evidence defendant actually but mistakenly believed the checks were genuine. And, because the instruction

12

was unwarranted, defendant's trial counsel could not have been ineffective in failing to request it. (See *People v. Dennis* (1998) 17 Cal.4th 468, 541 [claim of ineffective assistance premised on failure to request jury instruction must fail where defendant was not entitled to such instruction].) We reject the claim of ineffective assistance of counsel.

C.      *CALCRIM No. 224 or CALCRIM No. 225*

Defendant argues the trial court erred in instructing the jury on the use of circumstantial evidence. Specifically, he argues the trial court should have granted his request to instruct the jury with CALCRIM No. 225, which sets forth the standard for evaluating circumstantial evidence of intent or mental state, rather than giving CALCRIM No. 224, which sets forth the standard for evaluating circumstantial evidence pertaining to all elements of an offense.[6] We disagree.

---

[6] CALCRIM No. 224 provides: "Before you may rely on circumstantial evidence to conclude that a fact necessary to find defendant guilty has been proved, you must be convinced that the People have proved each fact essential to that conclusion beyond a reasonable doubt. [¶] Also, before you may rely on circumstantial evidence to find the defendant guilty, you must be convinced that the only reasonable conclusion supported by the circumstantial evidence is that the defendant is guilty. If you can draw two or more reasonable conclusions from the circumstantial evidence, and one of those reasonable conclusions points to innocence and another to guilt, you must accept the one that points to innocence. However, when considering circumstantial evidence, you must accept only reasonable conclusions and reject any that are unreasonable."

CALCRIM No. 225 provides: "The People must prove not only that the defendant did the act[s] charged, but also that (he/she) acted with a particular (intent/[and/or] mental state). The instruction for (the/each) crime [and allegation] explains the (intent/[and/or]mental state) required. [¶] A[n] intent/[and/or] mental state) may be proved by circumstantial evidence. [¶] Before you may rely on circumstantial evidence to conclude that a fact necessary to find the defendant guilty has been proved, you must be convinced that the People have proved each fact essential to that conclusion beyond a reasonable doubt. [¶] Also, before you may rely on circumstantial evidence to conclude that the defendant had the required (intent/[and/or] mental state), you must be convinced that the only reasonable conclusion supported by the circumstantial evidence is that the defendant had the required (intent[and/or]mental state). If you can draw two or more reasonable conclusions from the circumstantial evidence, and one of those reasonable

13

"CALCRIM Nos. 224 and 225 provide essentially the same information on how the jury should consider circumstantial evidence, but CALCRIM No. 224 is more inclusive." (*People v. Samaniego* (2009) 172 Cal.App.4th 1148, 1171.) CALCRIM No. 224 should be given when the prosecution relies on circumstantial evidence to prove any element of the case. (*Ibid.*) But it "should not be given where circumstantial evidence is incidental to and corroborative of direct evidence." (*Ibid.*) By contrast, "CALCRIM No. 225 is to be used in place of CALCRIM No. 224 'when the defendant's specific intent or mental state is the only element of the offense that rests substantially or entirely on circumstantial evidence.' " (*Ibid.*)

Defendant's specific intent was the primary disputed issue at trial, to be sure. But the prosecution relied on circumstantial evidence to prove other elements of the conspiracy charge, besides defendant's specific intent. Circumstantial evidence showed that George had the opportunity to steal the checks from K.T., the first overt act alleged to have been made in furtherance of the conspiracy. Circumstantial evidence also showed that defendant or George wrote and signed defendant's name on the checks, the second overt act alleged to have been made in furtherance of the conspiracy. The prosecution thus relied on circumstantial evidence to prove two of three overt acts charged as part of the conspiracy, and not only defendant's specific intent. CALCRIM No. 224 was appropriately given.

D.    *Assembly Bill 1950*

Defendant argues that Assembly Bill 1950 requires reduction of his probationary term from three years to two years. At the time of defendant's sentencing in November

---

conclusions supports a finding that the defendant did not have the required (intent/[and/or] mental state) and another reasonable conclusion supports a finding that the defendant did not, you must conclude that the required (intent/[and/or] mental state) was not proved by the circumstantial evidence. However, when considering circumstantial evidence, you must accept only reasonable conclusions and reject any that are unreasonable."

2019, the trial court had authority to impose a probationary term of three years. (Former § 1203.1, subd. (a).) Assembly Bill 1950 took effect on January 1, 2021, and reduced the maximum probationary term for most felony offenses to two years. (Stats. 2020, ch. 328, § 2; § 1203.1, subd. (a); *People v. Lord* (2021) 64 Cal.App.5th 241, 244-246; *People v. Quinn* (2021) 59 Cal.App.5th 874, 879.) The People concede that Assembly Bill 1950 applies retroactively and requires reduction of defendant's probationary term to two years. We accept the concession and direct the trial court to modify the probation order to reflect the new two-year term. (*People v. Sims* (2021) 59 Cal.App.5th 943, 964; *People v. Quinn, supra,* 59 Cal.App.5th at pp. 881-885.) Should either party wish to make further arguments regarding the status of probation, they may do so by filing the appropriate motion(s) with the trial court.

E.    *Assembly Bill 1869*

Defendant next argues that Assembly Bill 1869, which became effective on July 1, 2021, requires us to strike certain probation fees imposed pursuant to former section 1203.1b; namely, a $390 probation report preparation fee, a $220 supplemental probation report fee (which was stayed pending the successful completion of probation), and a $25 per month supervision fee. The People acknowledge that the fees became "unenforceable and uncollectible" on July 1, 2021, but argue we need not take any action, as defendant obtained relief automatically on that date. We agree with the parties that Assembly Bill 1869 renders the fees unenforceable and uncollectible but disagree with the People as to the appropriate remedy. In addition to making the unpaid balance of the fees unenforceable and uncollectible, Assembly Bill 1869 requires that any portion of a judgment imposing such fees be vacated. (§ 1465.9, subd. (a); see Stats. 2020, ch. 92, § 62; *People v. Clark* (2021) 67 Cal.App.5th 248, 259 ["The language of the statute is mandatory (i.e., 'shall be vacated')"].) Accordingly, we will direct the trial court to vacate any fees imposed pursuant to former section 1203.1b that remain unpaid as of July 1, 2021.

15

*F.  Assembly Bill 177*

In supplemental briefing, defendant argues that the passage of Assembly Bill 177 eliminates two additional probation fees: (1) a $30 administrative fee imposed pursuant to former section 1202.4, subdivision (l); and (2) a $110 transfer fee imposed and stayed pursuant to former section 1203.9. The People concede the issue, and we accept the concession.

Assembly Bill 177 added subdivision (b) to section 1465.9, which provides: "On and after January 1, 2022, the balance of any court-imposed costs pursuant to Section 1001.15, 1001.16, 1001.90, *1202.4*, 1203.1, 1203.1ab, 1203.1c, 1203.1m, 1203.4a, *1203.9*, 1205, 1214.5, 2085.5, 2085.6, or 2085.7, as those sections read on December 31, 2021, *shall be unenforceable and uncollectible and any portion of a judgment imposing those costs shall be vacated.*" (Stats. 2021, ch. 257, § 35, emphases added.) The emphasized language makes clear that the administrative and transfer fees assessed against defendant under former sections 1202.4, subdivision (l) and 1203.9 are now unenforceable and uncollectible. (Stats. 2021, ch. 257, § 35.) Accordingly, we will direct the trial court to vacate the $30 administrative fee imposed pursuant to former section 1202.4, subdivision (l) and $110 transfer fee imposed and stayed pursuant to former section 1203.9.

*G.  Correction of Minute Order and Order of Probation*

Finally, defendant argues that errors appear in the trial court's minute order dated September 13, 2019, and order of probation dated November 6, 2019. Specifically, he observes that both orders incorrectly reflect a violation of section 182, subdivision (a)(4), when he was charged and convicted under section 182, subdivision (a)(1). The People concede the issue, and we accept the concession. We will direct the trial court to correct these errors.

16

## III.  DISPOSITION

The matter is remanded to the trial court with directions to modify defendant's term of probation in accordance with Penal Code section 1203.1, subdivision (a), as amended by Assembly Bill No. 1950 (2019-2020 Reg. Sess.) and vacate: (1) any fees imposed under former Penal Code section 1203.1b that remain unpaid as of July 1, 2021; and (2) the administrative fee imposed pursuant to former Penal Code section 1202.4, subdivision (l) and transfer fee imposed and stayed pursuant to former Penal Code section 1203.9.  The trial court is further directed to correct the September 13, 2019 minute order and November 6, 2019 order of probation to correctly reflect the violation of section 182, subdivision (a)(1).  In all other respects, the judgment is affirmed.

/S/

_____

RENNER, J.

We concur:

/S/

_____

DUARTE, Acting P. J.

/S/

_____

KRAUSE, J.